## THE STATE v. MACK NAVE, Appellant.

### Division Two, June 4, 1920.

1. **IMPEACHMENT: Expressed Opinion.** Contradictory statements, to be competent for purposes of impeachment, must be statements of fact pertinent to the issues, and not merely matters of opinion. So that testimony of a witness that. he had stated to defendant's father that he "thought" defendant had stolen the mules is not competent for the purpose of impeaching the father's testimony, but its admission is gross error.

2. **GUILT: No Evidence.** In order to convict it is necessary to connect, by competent evidence, the defendant with the commission of the crime. And in this case there is no such evidence and the defendant is discharged.

3. ———: ———: **Might As Well Plead Guilty.** A statement of a fifteen year-old boy, under arrest and in the custody of the sheriff, away from home, with no friend or counsel to advise him, when told by the sheriff that he must have a preliminary trial or waive it, "I guess I just as well plead guilty," is only an expression of help-lessness and despair, and under the circumstances ought not to be considered evidence against him.

4. ———: ———: **Loaning Mule To Thief.** The fact that defendant loaned a mule to the hired hand, whose guilt is certain, to ride the night he took the stolen mules from a pasture, if it is shown that defendant knew where the hired hand was going or what he borrowed the mule for, might have some probative force; but there is nothing unusual in lending a horse or mule to a hired man to ride, and of itself it shows no connection on defendant's part with the crime.

Appeal from Taney Circuit Court.—*Hon. Fred Stewart,* Judge.

REVERSED.

*G. W. Thornberry* and *D. F. McConkey* for appellant.

(1) This conversation between witness Combs and Willis Nave, the father of defendant, to the effect that

they believed the defendant was guilty, had in the absence of the defendant, was incompetent for any purpose and wholly inadmissible and highly prejudicial. (2) Taking all the testimony in connection, it is not sufficient to warrant a conviction under the law. The testimony is purely circumstantial and does not establish the *corpus delicti,* which is necessary in all cases to sustain a conviction. (3) Mere suspicion, however strong, will not supply the place of evidence when life or liberty is at stake. State v. Jones, 106 Mo. 313; State v. Hammond, 226 Mo. 604; State v. Crabtree, 170 Mo. 657.

*Frank W. McAllister,* Attorney-General, and *George V. Berry,* Assistant Attorney-General, for respondent.

The bill of exceptions is not authenticated by the trial Judge; therefore, there is nothing before this court but the record proper. Secs. 2030-2037, R. S. 1909; State v. Griffin, 249 Mo. 626; State v. Watts, 248 Mo. 495; State v. Brown, 216 Mo. 377; State v. Libby, 203 Mo. 597; State v. Collins, 196 Mo. 88; Reno v. Fitz Jarrell, 163 Mo. 413; Cooper v. Maloney, 162 Mo. 687; State v. Brown, 164 Mo. App. 727.

WHITE, C.—The defendant was indicted in the Circuit Court of Taney County on a charge of grand larceny, was convicted April 24, 1919, and his punishment assessed at two years' imprisonment in the State Penitentiary, and appealed.

Defendant was charged with stealing two mules that belonged to James Beck. Beck lived just within the State of Arkansas, about three miles from Protem, Missouri. On the night of August 11, 1916, which was said by the witnesses to be Friday night, two bay mules belonging to Beck disappeared and he was unable to find them. About six weeks later he learned they were at the barn of Rich Kissee at Ozark, in Christian County; he went there, identified them and took them away. On Monday following the Friday night on which the mules were stolen,

they were sold to Stone & Hesterlee, by one Wayne Moulder, for $160, although at the time they were worth $235. Stone & Hesterlee immediately sold them to Kissee.

The facts relied upon by the State to connect the defendant with the theft of the mules, briefly are as follows:

Mack Nave was a boy about fifteen years of age and lived with his father, Willis Nave, in Taney County, about twenty miles from where Beck, the owner of the mules, lived. Willis Nave had a son, Perry Nave, who lived in the neighborhood of Protem, a few miles from where Beck lived. On Friday, about August 11th, Mack Nave passed Beck's house and watched the house with unusual and unnecessary intentness, according to the statement of Beck; the mules disappeared that night. On Sunday, two mules with halters on, answering the general description of Beck's mules, were seen in Willis Nave's pasture. It was suggested to Mack Nave that they had better be driven out; he said, ''Let the mules get out the way they got in.'' The witnesses who saw those mules couldn't tell whether they were fastened up by halters or not. The defendant, Mack Nave, was in the neighborhood of Protem at the time the mules were stolen and, according to the testimony of his brother, he stayed all night at Perry's house on that night, and remained there until noon the next day.

Wayne Moulder, who sold the mules to Stone & Hesterlee two days after they were stolen, was a farm hand in the employ of Willis Nave. When he brought the mules to Ozark he was riding a mule which belonged to Willis Nave; Mack Nave, the defendant, told some of the witnesses that he loaned Moulder that mule to ride Sunday night.

As soon as the mules were recovered the defendant was arrested by the Sheriff of Christian County and taken to Ozark. On the way the sheriff stopped at Sparta, in Christian County, where he told his prisoner that he would have to take him before a justice of the peace. He explained to Nave that he would have to have a pre-

liminary trial or else waive it. The defendant did not seem to understand that he would have to go through a preliminary trial, and after further explanation, he said: "Well, I guess I just as well plead guilty." Other witnesses heard him make the statement in connection with a preliminary hearing. No objection was made to that evidence. The next morning after he was taken to Ozark, his father, Willis Nave, having ridden all night to reach Ozark, appeared there and paid Hesterlee $207, the amount the mules had cost Hesterlee, with the expense. Hesterlee said he thought after that transaction the matter would be dropped. Beck then took the mules home. Wayne Moulder disappeared about the time the mules did and was not seen in the neighborhood afterwards.

On Sunday, when the mules were seen in Willis Nave's pasture, the place was in charge of one Norman Combs who, it seems, had rented the place. He knew the mules referred to did not belong to Willis Nave. Some other facts are mentioned in the evidence, tending to show the movements of Mack Nave and Wayne Moulder in the neighborhood Saturday and Sunday after the mules disappeared from Beck's place.

When Willis Nave was on the stand and recalled by the defendant in rebuttal, he was asked this question:

"I will ask you if you didn't have a conversation with Norman Combs in which you said, 'Aint this a good get off?' and he said, 'Yes sir, it is,' and you said, 'What do you think of this?' and he refused to tell you there before the family, and out in the field the next morning you asked him again, 'What do you think about this?' and you told him that you thought Mack had taken the mules?"

The witness denied making any such statement.

Norman Combs was then placed upon the stand and asked if the conversation took place—the defendant not present—in substantially the same language as in the question put to Willis Nave; he answered that Nave did make the statement. All this was duly objected to by appellant's counsel and exceptions saved.

I.   The evidence offered and admitted to contradict
Willis Nave was gross error. While a witness may be
impeached by showing that he has made statements at
other times in contradiction of what he testifies on the
stand, contradictory statements, which may
**Impeachment.** be shown for the purpose of impeachment,
must be statements of fact pertinent to the issue and not
merely matters of opinion; facts which would be com-
petent evidence, independent of any inconsistency with
the testimony of the witness.   [Hamburger v. Rinkel,
164 Mo. 398, l. c. 407; McFadin v. Catron, 120 Mo. 252,
l. c. 263; Schloemer v. Transit Co., 204 Mo., l. c. 116;
Wojtylak v. Coal Co., 188 Mo. l. c. 289; Herman v. Ry.,
L. H. & P. Co., 144 Mo. App. l. c. 154.]   Here the former
statment of Willis Nave, which the State was allowed to
prove, merely gave his opinion; it is not a statement of
any fact within the knowledge of the witness or within
the knowledge of Nave.   Its damaging character is suf-
ficient to account for the verdict.

II.   In order to convict it was necessary, by com-
petent evidence, to connect the defendant with the com-
mission of the crime.   The statement made by the appel-
lant when under arrest that he thought he had better
plead guilty was incompetent, but was not ob-
**Connection
with Crime.** jected to.   A boy, fifteen years of age, in cus-
tody of an officer, a threatened prosecution
for grand larceny impending, with no friend or counsel
near to advise him, makes the statement which on its
face does not prove he actually participated in taking
the mules.   It was only an expression of helplessness
and despair in the heart of the boy and, under the cir-
cumstances, ought not to be considered as evidence
against him.

There is no other fact in the evidence which accom-
plishes more than to arouse a mere suspicion that he par-
ticipated in the theft.   There is no doubt of the guilt of
Wayne Moulder; he took the mules away from the neigh-
borhood of Protem to another county and sold them, got

the money and disappeared. It is not shown that the defendant assisted in any manner in taking the mules away or received any of the proceeds of the sale. He passed Beck's house on the day preceding the night on which the mules were stolen and actually *looked* at Beck's house with considerable interest. It is not even claimed that he looked at the mules or saw them on that occasion. He loaned Moulder the mule on which he rode the night he took the mules away. It is not shown to be anything unusual for one to loan a mule or saddle horse in that community without inquiring the purpose for which it may be used. If there had been evidence that Mack Nave knew where Moulder was going and what he borrowed the mule for, the evidence of that loan might have some probative force.

The mules seen in the pasture of Willis Nave the day after Beck's mules disappeared were not shown to be the stolen mules. That pasture at that time was not in charge of Mack Nave or of his father, Willis Nave, but was in charge of Norman Combs, a witness for the State. It was not shown that the defendant brought the mules there or took them away or had anything to do with them while they were there except to tell someone that they might get out the way they got in.

The evidence was entirely insufficient to submit to the jury the question of the defendant's guilt.

The judgment is reversed and the defendant discharged. *Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.