**STATE of Missouri, Respondent,**

v.

**Ruby Lee CURTIS, Appellant.**

No. 47056.

Supreme Court of Missouri,

Division No. 2.

June 8, 1959.

Motion for Rehearing or for Transfer to Court en Banc Denied July 13, 1959.

Raymond A. Bruntrager, St. Louis, for defendant.

John M. Dalton, Atty. Gen., James E. Conway, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

Ruby Lee Curtis has been found guilty of stealing, shoplifting a coat in excess of the value of fifty dollars from Scruggs, Vandervoort & Barney, and sentenced to five years' imprisonment. V.A.M.S. §§ 560.156, 560.161, Laws Mo.1955, p. 507. Ruby did not testify; her plea to the charge, however, was not guilty and two witnesses gave evidence from which Ruby hoped, no doubt, the jury would draw the inference that she had not and could not have stolen the coat, at least on the date charged, January 25, 1958. Edna Simpson was co-hostess at a tea or social at the Hopewell Baptist Church on Sunday, January 19, and she said that Ruby as a guest on that occasion wore a red coat, "appears to be the same coat" as state's exhibit one. And Vera Steele, a beauty operator who always admired Ruby's clothes, definitely remembered that when she came to the beauty parlor on January 17 she was wearing a red coat "similar" to the one the state claims she stole on January 25. Nevertheless, upon this her appeal, Ruby does not challenge the sufficiency and cogent, probative force of the evidence establishing her guilt. She does claim, however, that she was deprived of a fair trial and for that reason is entitled to a new trial.

It is her contention that her right to a fair trial was improperly and unjustly invaded in these particular respects: (1) that the trial court erroneously permitted Mrs. Heinrichs, a store detective, and Mrs. Paterson, an assistant buyer, to state that they had known her or that she had been pointed out to them on occasions prior to the afternoon of January 25, and she particularly complains of the court's permitting Mrs. Heinrichs to say that she "trailed" her and once that the defendant "looked around to see who was trailing her"; (2) that the court erroneously permitted a store detective, Mr. Boje, the store's "superintendent of protection," to give his opinion of the value of the coat; and (3) that she is entitled to a new trial because the trial judge, by a homely illustration in ruling on an objection, indicated to the jury his approval of the witness' statement as to the ownership of the coat, a material issue in her trial, of course.

Mrs. Paterson was Scruggs' assistant buyer, attached to the "costume room" and it was she who received and invoiced the coat into the costume room stock on behalf of her employer. The coat is a "peony red" woolen winter garment, the only one of its kind, designed and styled by Nettie Rosenstein. The invoice was in the box in which Mrs. Paterson received the coat in the costume room in September and she receipted the invoice. Scruggs paid $195 for the coat and its original retail price was $335. The coat did not sell as expected and its price was finally marked down to $175 and the coat was placed on the "reduced rack." When Mrs. Paterson went to lunch on January 25, the coat was on the rack in the costume room. When she returned from lunch the coat was gone from the rack and it had not been sold. Mrs. Heinrichs saw Ruby take the coat from the rack, put it on and walk out of

the costume room. Mrs. Paterson next saw the coat in the office adjoining the costume room where Mr. Boje and Mrs. Heinrichs had detained Ruby. The coat was taken from Ruby, wrapped in a box, the box was marked and initialed and box and contents were turned over to two city detectives. Mrs. Paterson identified the coat, exhibit one, as the coat she had received and invoiced as the property of Scruggs. Thus, whether Mr. Boje was qualified to testify to the coat's value of $195 or not, the fact of its value was plainly established by other evidence and it is not demonstrable that his cumulative opinion testimony of its value infringed Ruby's right to a fair trial. State v. Wilson, Mo., 286 S.W.2d 756; State v. Bright, Mo., 269 S.W.2d 615.

■ In addition to other identifying matters there was a Nettie Rosenstein label in the coat collar and there had been a Scruggs blue price tag (blue tags always being used for coats) attached to the inside of the collar but the tag had been removed leaving a piece of the string only attached to the collar. Mrs. Heinrichs had previously testified to the piece of string and there is now no objection to her having done so. Subsequently, after Mrs. Paterson had already identified the coat and its value, she was asked the question, "Any other identifying features?" She answered, "Yes. Nettie Rosenstein label, and here is a little piece of string that holds our tag." Defense counsel interposed and said, "I object to that; no foundation laid for that answer, and ask the jury be instructed to disregard it, and the answer be stricken." The court said, "I overrule it. It is like a man who owns cattle if he has his label in the ear—it is for her to say if that is the one type of label. That is all it is." Upon counsel's insistence that the court's statement "about cows and labels * * * corroborates this witness's previous testimony" the court said, "It is all stricken at the request of Mr. Bruntrager. That is as far as the ruling will go," and the court refused to instruct the jury to disregard his remark. As with

its value, the coat had been otherwise identified, almost conclusively, and the piece of string was not an all important issue or the telling piece of evidence a piece of string has been in other circumstances. The court's homely illustration, as applied to range cattle at least, is supported by the highest authority: "When an animal is found in B's possession, and the animal bears a brand or other mark, and one of the issues is whether A is the owner of the animal, it is a natural and immediate inference that the animal belongs to the person whose brand it bears, and, if that brand is A's, then to A." 1 Wigmore, Evidence, § 150, p. 589; V.A.M.S. §§ 268.010–268.110. But in this jurisdiction, "If any dispute shall arise about the question of whose any particular mark or brand may be, it shall be decided by the record of the clerk" (V.A. M.S. § 268.020); "an interesting specimen of primitive legislative modes of expression," adds Professor Wigmore. 1 Wigmore, Evidence, p. 592. So, while the illustration may be imperfect as an analogy (the tag having been removed from the coat), the judge was in fact illustrating his reason for his ruling that Mrs. Paterson could testify to the identifying tag and string, and the court's statement was not necessarily an approving comment or summing up as to the force and effect of the evidence. State v. Moore, Mo., 303 S.W. 2d 60. Compare: State v. Drew, Mo., 213 S.W. 106 and State v. Hyde, 234 Mo. 200, 255, 136 S.W. 316, 332.

Ruby's contention that there was an infringement of her right to a fair trial in permitting Mrs. Heinrichs to say that she had "trailed" her when she came in the store and in permitting Mrs. Paterson and Mrs. Heinrichs to say that they had seen and known Ruby prior to the date of the theft arose in these circumstances: As stated, Mrs. Paterson last saw the coat when she went to lunch, she next saw it after she returned from lunch in the office adjoining the costume room where the store detectives had detained Ruby. In testify-

ing, after identifying the coat, Mrs. Paterson was asked, "Did you see Mrs. Curtis (Ruby) in the office?" She answered, "Yes," and then was asked, "Do you see her today?" She replied, "Yes; right there (indicating); light brown ——." Defense counsel interposed and objected that "it is immaterial to any issue in the case." The court said, "It is a matter of identity." Then Mrs. Paterson was asked the question, "Did you know Mrs. Curtis prior to January 25, 1958?" She answered, "Yes, * * * She had been pointed out to me." Defense counsel then said, "I object to that as highly improper and ask the jury be instructed to disregard it." Mrs. Heinrichs, as she testified, identified Ruby as the person she had seen removing the coat from the rack, and then she was asked whether, "Prior to January 25th, did you ever see Ruby Lee Curtis?" She answered, "Many a time." Defense counsel objected on the grounds "it is immaterial and irrelevant and highly prejudicial." When Mrs. Heinrichs again said that she had seen Ruby prior to January 25th it was objected that "this may be referring to some other crime; there is certainly no question of identification in the case." Defense counsel stated that he did not know in what circumstances Mrs. Heinrichs had seen her before and that it might be extremely prejudicial. The court stated that the whole matter went to Mrs. Heinrichs' identification of the defendant and whether she could be positive and the weight that should be given her testimony. Mrs. Heinrichs then said that she had seen Ruby "a number of times" and that prior to January 25, 1958, she had talked to Ruby in Scruggs.

■ Aside from the specific inadequacy and inapplicability of the "irrelevant" and "immaterial" objection (McCormick, Evidence, §§ 151–152, pp. 314–315), the witnesses did not in point of fact testify to or refer to, either directly or indirectly, any other crime Ruby may have committed (Compare: State v. Farmer, Mo., 130 S.W. 2d 572) and there was in this instance no

reflection on her character (State v. Hayes, 356 Mo. 1033, 204 S.W.2d 723), even though she was charged with and a prior conviction of manslaughter was shown. It is inconceivable that there could be more cogent, satisfying corroboration of a witness' identification of a person, or of their qualification to identify a person, than his or her prior acquaintance. State v. Malone, Mo., 301 S.W.2d 750, 757. In one sense, in view of the overwhelming probative force of the record, there may have been no "question of identification in the case," it was nevertheless a part of the state's case and duty to prove that Ruby was the person who, despite her denial, took the coat. State v. Nave, 283 Mo. 35, 222 S.W. 744.

■■ The other claim that she was deprived of a fair trial has to do with Mrs. Heinrichs saying that she "trailed" Ruby when she came in the store and once that Ruby "looked around to see who was trailing her." It is again said that this testimony was irrelevant and immaterial to any issue in the case and constituted an attack upon Ruby's character, a matter not in issue since Ruby did not testify. It is also said that the statements were not responsive to the questions asked and that they were mere conclusions, not based on any facts within the knowledge of the witness and invaded the province of the jury. It is not proper, of course, for a witness to testify to her conclusions but a testimonial conclusion particularly infringes the right to a fair trial when it has the force or effect of answering the ultimate issue the jury is to determine; as in a rape case, "from what you heard her say there, if you understood from what she said and her actions there, she had been outraged by this man Wertz," the witness concluded "from her general appearance I would be inclined to think she had been mistreated." State v. Wertz, 191 Mo. 569, 578, 90 S.W. 838, 841. This is not to approve of a witness' testifying to a conclusion and it is not to say that Mrs. Heinrichs' statement that Ruby "looked around to see who was trailing her" is not an improper conclusion.

It is assumed that the statement is a conclusion. Furthermore, this is not to say, at least in the circumstances of this case, that evidence of "trailing," "shadowing" or of surveillance is properly admissible (in State v. Smith, Mo., 213 S.W. 113, there was no objection to the evidence), on some occasions the witness could have employed less offensive language. When Ruby left the costume room with the coat and went to the shoe department the witness could have said that she "followed" her. It is not necessary to a determination of the appeal to attempt a reconciliation of the cases dealing with what is and what is not an improper conclusion on the part of a witness, it is doubtful that they can be satisfactorily reconciled. Compare: State v. Evans, 267 Mo. 163, 183 S.W. 1059; State v. Davis, 284 Mo. 695, 225 S.W. 707 and State v. Wilkins, Mo., 100 S.W.2d 889. In view of the record, the manner and context in which the statements came into the case the appellant is in no position to complain of their harmful effect.

The circumstances were these: Mrs. Heinrichs first saw Ruby in the store about eleven o'clock in the morning. She next saw Ruby entering the costume room on the third floor about one o'clock. Unknown to Ruby, of course, Mrs. Heinrichs saw her remove the coat from the rack, saw her put it on and glance in a three-way mirror, saw her walk out of the costume room and ride down the escalator to the shoe department on the second floor. Mrs. Heinrichs, of course, followed Ruby and stood back out of sight as Ruby looked at shoes. After detailing these circumstances in general, Mrs. Heinrichs was asked this question: "How long had you followed Ruby Lee Curtis that day, the 25th of January, this year?" Defense counsel objected, "That is too vague and too indefinite." The court overruled that objection and the witness answered, "Well, it was a short time. I had trailed her earlier in the morning; when she came in the second time, naturally, I trailed her again." Defense counsel instead of making specific objection with reasons (State v. Tyler, Mo., 306 S.W.2d 452) said, "I object to that answer and ask that it be stricken and a mistrial be declared." The court said, "I will strike the word 'naturally' and let the answer stand. I overrule the objection and deny the request." There was no further request by defense counsel for further affirmative action on the part of the court. There was no other reference to "trailing" Ruby during Mrs. Heinrichs' direct examination. The subject next arose during her cross-examination. Defense counsel cross-examined Mrs. Heinrichs at length as to the surroundings, distances, what she could and could not see Ruby do and finally he asked the question, "Would you tell the jury approximately how much time (you) spent in that department (costume room) prior to one o'clock?" The witness answered, "I didn't spend too much time; I had a large territory to cover and I just happened at one time to trail Miss Curtis there." Defense counsel then objected that the answer was not responsive to the question and asked that the jury be instructed to disregard it and he also asked that a mistrial be declared. The court overruled the objection and denied the request for a mistrial. Immediately following this episode counsel continued his questioning as to the "first time" and the "second time" Mrs. Heinrichs had seen Ruby and in response to one question, without objection, she said, "I trailed her from the first floor to the second floor." Subsequently counsel was cross-examining Mrs. Heinrichs in detail as to the coat and what she saw Ruby do with it and she again said that she saw her "lift" the coat from the rack, put it on and walk out of the costume room. And then counsel asked the question, "And you followed her twice the distance to that door?" The answer was, "I trailed her all the way." Then in detail she was cross-examined as to her following Ruby to the shoe department, how far she was behind Ruby and what happened on the way and it transpired that Ruby had stopped in another dress department on the way to the shoe department. And counsel inquired, "My question is, did she examine any dress-

es?" (in that department). The answer was, "She didn't have her hands on any dresses or anything. A saleslady approached her and she said, no, she was just looking." Then the question was, "Did she look then?" The witness answered, "She looked around to see who was trailing her." defense counsel said, "Your Honor, I object and ask that be stricken and that a mistrial be declared. It is not responsive to any question." The court said, "Overruled and deny the request." Counsel continued his cross-examination as to what transpired in the second dress department, how long Ruby was in that department, what she did and how far away Mrs. Heinrichs remained until Ruby entered the shoe department. And then he inquired, "And I believe your testimony is, you were still following?" In these circumstances, in this context, the response particularly complained of ("She looked around to see who was trailing her") having been elicited on cross-examination (State v. Maggard, 250 Mo. 335, 157 S.W. 354; State v. Comer, 296 Mo. 1, 247 S.W. 179), and the fact of "trailing" having been testified to or elicited on other occasions without objection (State v. Bright, supra), it may not be said that there was a manifest infringement of the appellant's right to a fair trial, entitling her as a matter of right to a new trial. 24 C.J.S. Criminal Law § 1914(c), p. 935.

Other matters "upon the record before them" (V.A.M.S. § 547.270) have been examined and there being no manifest infringement of the appellant's right to a fair trial the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.