**STATE of Missouri, Respondent,**

**v.**

**Walter KING, Appellant.**

**No. 47716.**

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Rehearing Denied April 11, 1960.

Raymond A. Bruntrager, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., for respondent.

EAGER, Judge.

Defendant was found guilty of robbery by means of a dangerous and deadly weap-

on, with a prior felony conviction, and he was sentenced to life imprisonment. He has appealed in due course, but has filed no brief here. We, of course, consider those matters properly raised in his motion for new trial.

From the State's evidence the jury could reasonably have found the following facts: Shortly before 5:00 p. m. on January 13, 1959, a large Negro man appeared before the cashier's counter of Georgia White on the second floor of Scruggs-Vandervoort-Barney, Inc., in St. Louis. This man had waited behind two women for whom Mrs. White had cashed checks, but when he approached the counter he was alone. He reached over the counter and dropped a note, a brown paper bag and a one-dollar bill on Mrs. White's desk, which was on a lower level; Mrs. White asked him what he wanted, and getting no reply she turned and walked away about six or seven steps. The man said: "Come back here. I only want change for a dollar bill." She went back to the counter, and found that she was confronted by the barrel of a pistol pointed at her through a hole in another paper sack held in the man's hand at a distance of "an arm's length." The man said he wanted "the big money and to hurry it up"; he kept the gun pointed at her and she placed something over $2,400 in bills in the paper bag, at the same time managing to press an alarm button; she handed the man the bag and he departed rather hurriedly down a stairway leading from the cashier's office to the outside Ninth Street entrance. The alarm bell rang at a location outside the store. Mrs. White immediately told her supervisor and others of the occurrence. Within a matter of minutes the building protection employee and the police were there. Mrs. White did not examine the man's note until after he left.

Defendant was arrested on the same evening at the home of one Alberta Ross. He was very definitely identified by Mrs. White, who testified that she had observed him from his chest or shoulders up for a matter of minutes, including the time when she was putting the money in the bag; she described his build, weight, color, hair, and parts of his clothing in detail. Mrs. White also picked out the defendant as the robber in the "line-up" at the police station on the same evening. Miss Janet Vaughn, a cashier stationed the length of one desk to Mrs. White's right, had noticed the man while she was stamping mail; he was then standing in line, but when he did not come to her station, she went ahead with her work. She identified defendant in the police "line-up" on the day after the robbery and identified him at the trial; she also described his appearance in detail. Alfred Hodges, in charge of protection at Scruggs, identified defendant as the man he had seen coming down the steps leading from the cashier's office to the Ninth Street entrance; the man was carrying a brown bag and passed on outside; this was just before Hodges was notified of the robbery. He also picked out the defendant in the line-up on the evening of the robbery. When arrested, defendant had on the same type of dark blue shirt or sweater described by Mrs. White. The State introduced the records of three prior Missouri convictions, two for second degree burglary and one for grand larceny. The sentences on these were served concurrently, and defendant's discharge was also shown. An attempt to prove a prior conviction and confinement in Michigan for armed robbery was unsuccessful, because of the insufficiency of the records produced; this ruling followed a discussion between court and counsel and the records were never formally offered in evidence.

Defendant adduced some evidence tending to establish an alibi. A Federal Narcotics Agent testified that he talked with defendant on the phone twice after 4:00 p. m. on the day in question, the last conversation terminating at 4:25 or 4:30. Defendant called the witness the first time, and on the second he reached defendant at a number which proved later to be that of a confectionery at Vandeventer and St. Ferdinand Streets, beneath the place where

defendant lived. Along a different line, and over strenuous objections, defendant was permitted to show the circumstances of a robbery at the Laclede Gas Company office in St. Louis on February 4, 1959. This date was three weeks after the Scruggs robbery. Defendant's theory was that he was in jail at the time and could not have committed that robbery, but that its modus operandi was so similar as to be convincing that he did not commit either. The Laclede cashier testified that a large Negro man put a note and a paper bag on the cashier's counter and, by means of a gun concealed in another paper bag, perpetrated the robbery. She testified also that defendant was not the man who robbed her. The note used in the Laclede robbery was offered in the present trial; it was similar in wording to the one used at Scruggs. Both were printed on the back of check forms. A Mr. Vollertsen, an examiner of questioned documents for the Federal Government, was produced in an effort to show that both notes were written or printed by the same person. It will suffice to say that he pointed out certain similarities and certain differences, but stated that he was unable to reach a definite conclusion on that question; he also failed to reach a definite conclusion from a comparison of the notes with known writing or printing of the defendant.

■ Defendant does not question the sufficiency of the evidence for submission. We consider now the matters assigned as error in the motion for new trial. The Assistant Circuit Attorney stated in his opening statement that he expected to prove a prior conviction for armed robbery in Michigan. The documents by which he attempted to prove this were ruled inadmissible, primarily because no actual judgment of conviction or sentence was shown, but only a "mittimus" or direction for confinement. The colloquy concerning these records took place out of the hearing of the jury; at its conclusion counsel for defendant stated that he objected "to the instrument" and asked that "it will be stricken from the record." The court said: "Sustained. The motion was sustained." Counsel further stated that he had consulted with the defendant and that they had determined not to ask a mistrial. These records were never received in evidence and, in fact, they were never actually offered, although identified by the reporter. The point now made is that the court erred in not instructing the jury affirmatively to disregard the statements previously made about the conviction on voir dire and in the opening statement. The voir dire is not shown. The court ruled favorably to the defendant on his objections; it could not strike the exhibit from the record, for it was never in the record. No request was made for an instruction on the subject, and no motion was made to strike the statements. There was no occasion or necessity for the court to instruct the jury on this matter without specific request. See, generally, State v. Lee, 361 Mo. 163, 233 S.W. 2d 666, 667, 668; State v. Parker, Mo., 324 S.W.2d 717, 724. The making of the statements did not constitute error for they were not objected to and the good faith of counsel was not and is not impugned. Thereafter, the court could not be put in error except by a specific request. And it would be difficult to find this matter prejudicial in view of the three other uncontradicted prior convictions and sentences; particularly is this true where the Michigan conviction was never referred to in the evidence or in the instructions, and the given instruction on this subject (No. 2) specified *three* prior felonies and set them out specifically.

■■ Defendant assigns error in that the court failed to instruct that the jury "should consider the fact that the defendant could not and did not commit the holdup of the Laclede Gas Company * *." Even assuming that defendant was in jail on February 4, 1959, which he did not attempt to show affirmatively, there is no merit whatever in the assignment. Actually, defendant claims error because the court

failed to comment upon and emphasize certain evidence favorable to him. This the court may not do. State v. Wilson, Mo., 233 S.W.2d 686, 688; State v. Lyles, 351 Mo. 1174, 175 S.W.2d 587; State v. Talbert, 351 Mo. 791, 174 S.W.2d 144. Of course, the court must instruct on the "law of the case" without request. Section 546.070(4) RSMo 1949, V.A.M.S.; State v. Wood, Mo., 266 S.W.2d 632, 637. Such an "instruction" as defendant claims should have been given would not have been an instruction on the law, but a mere statement of the meaning of certain isolated evidence. That was a matter solely for the jury. No such instruction was requested in writing but, if requested, it would have been improper to give it. The jury had before it the evidence and the direct issue as to whether or not defendant committed the Scruggs robbery; it merely failed to find as defendant wanted it to find. We remark here that the court allowed to defendant a considerable latitude in permitting the introduction of this evidence at all. It involved a collateral matter and introduced an element of confusion. When properly considered, it did not even bear upon a true alibi (as the State seems to indicate), for it involved defendant's whereabouts at a date long subsequent to the offense for which he was on trial.

■ It is claimed that error was committed in receiving State's Exhibits 2 and 3; No. 2 was a photograph of the stairway leading both up and down from the cashier's office and of a part of that office; No. 3 was of the same stairway as it came up from the ground floor. Exhibit No. 1 was a photograph of the cashier's office. These were all taken by a police photographer on March 6, 1959, and they were identified by him. Defendant now complains that No. 2 and No. 3 were not sufficiently identified because no one testified that they correctly represented the respective places shown as of January 13, 1959. There was no intimation of any change subsequent to January 13, 1959; the pictures were all interrelated and one wit-. ness specifically testified that Exhibit No. 1 truly represented the conditions on January 13, 1959. The exhibits were merely illustrative; the various identifications and references to the photographs carry a fair inference that they correctly showed the scenes as of the time of the holdup. Defense counsel used Exhibit No. 2 extensively in cross-examination. Defendant does not even assert prejudice in his motion for new trial in the use of these pictures. The assignment is denied.

■■ In an effort to establish an alibi, defendant produced Bernard A. Theisen, Jr., a Federal Narcotics Agent, who testified, as related above, to two telephone conversations with defendant between 4:00 o'clock and 4:30 p. m. on January 13, 1959. As preliminary thereto, he testified on direct examination: that he had talked with defendant on the phone prior to that date "about a half dozen times" and also in person; that he knew defendant's voice and recognized it; that on defendant's first call on January 13, 1959, he left a number, whereupon he, Theisen, "spoke with one of the other agents there in the office" and called the number back; that defendant answered and they talked for 12–15 minutes. On cross-examination Theisen testified, without objection, that he had known defendant since November 18, 1958; counsel then asked whether he had met defendant "socially or in an official capacity." Objection was first made that the question was immaterial, and later that the State was thus placing defendant's "character" in issue. The objections were overruled. The witness answered that he met defendant "in an official capacity," and that phase of the inquiry went no further. Defendant apparently claims that through this answer the jury was permitted to infer that defendant was guilty of a narcotics violation. This case is clearly distinguishable from the case of State v. Farmer, Mo., 130 S.W. 2d 572, where the State produced a prison official from Minnesota and brought out evidence that he had known the defendant there under two other names. It was held

that this might cause the jury to infer that his acquaintance had been in an "official capacity." In the present case the defendant himself was responsible for the production of the evidence in the first instance; he put on a witness who claimed on direct examination sufficient acquaintance with defendant to recognize his voice over the telephone. His means of knowledge and recognition were subject to a fair cross-examination, and this could hardly be accomplished without some inquiry into the nature of the acquaintance. If competent and relevant evidence is received, it does not become inadmissible or erroneous merely because it was prejudicial. State v. Murray, Mo., 280 S.W.2d 809; State v. Johnson, Mo., 234 S.W.2d 219, 222; State v. Poucher, Mo. App., 303 S.W.2d 197. The situation here is somewhat analogous to that in State v. Curtis, Mo., 325 S.W.2d 489, where, on a shoplifting charge, it was held proper to permit an assistant buyer to testify on direct examination that the defendant had been pointed out to her before the date of the offense in question, and to permit a store detective to testify that she had seen defendant "many a time" and had talked to her. The court there said, 325 S.W.2d loc. cit. 492: " * * * the witnesses did not in point of fact testify to or refer to, either directly or indirectly, any other crime Ruby may have committed (Compare: State v. Farmer, Mo., 130 S.W.2d 572) and there was in this instance no reflection on her character (State v. Hayes, 356 Mo. 1033, 204 S.W.2d 723), even though she was charged with and a prior conviction of manslaughter was shown. It is inconceivable that there could be more cogent, satisfying corroboration of a witness' identification of a person, or of their qualification to identify a person, then his or her prior acquaintance. State v. Malone, Mo., 301 S.W.2d 750, 757." On such matters there is a large discretion in the trial court. State v. Turner, Mo., 320 S.W.2d 579. There was no necessary inference here that defendant was a narcotics violator; he might just as likely have been an "informer," as suggested by the trial court at the time, or some kind of undercover agent. If any unfavorable inference was created here the cross-examination added little, if anything, to what the defendant himself had already brought out. There was no error in the ruling.

After the admission of the collateral evidence concerning the Laclede holdup, the State sought to put on evidence of a prior holdup at the Bell Telephone Company; this was presumably an attempt to show that a similar procedure had been used before the Scruggs holdup and before defendant was arrested. This attempt brought on a colloquy between court and counsel when the first witness was placed on the stand; the court indicated that it would not permit any testimony concerning that holdup, but that he could only rule on questions as asked. Two employees of the Telephone Company were permitted to state merely their names, their residences, and that they were employed in the City of St. Louis; objections were sustained to questions as to whether they were employed by the Bell Telephone Company. A mistrial was requested upon the theory, previously advanced, that this attempt of the State raised an inference that defendant had been involved in another robbery. The motion was denied but the court instructed counsel to make an offer of proof if he had any further witnesses on that matter; the subject was then dropped. While we fail to understand the studied persistence of the State's attorney in offering this evidence and attempting to force the issue after the court had indicated what his ruling would be, we do not find any such prejudice to defendant's interests as would justify a reversal. Even if the jury understood from the questions that these were Telephone Company employees, it would be rank speculation to assume that it further inferred that they were witnesses to a robbery committed by the defendant. The trial court, which heard and considered the whole matter, felt the same way. And, if it be material, the whole issue of collateral robberies was instigated by the defendant, and

the only evidence in the record concerning any other robbery was produced by the defendant. The point of error is denied.

■ The remaining assignments of the motion are that the court erred in not declaring a mistrial on each of two occasions during the State's final argument. These may be considered together. The particular statements now attacked were: (a) "if you want this type of thing to go on in the community then I say you should acquit him * * *"; and (b), "if you acquit this defendant then you have struck a blow on behalf of violence, * * *." Previously counsel for the State had argued without objection: that "the type of community we have rests with you * * *"; that "robbery is rabid in this city, and you have to stamp it out, and the only way * * * is * * * severe verdicts * *"; that "Its not an easy task * * * but * * you would be less than men if you dont perform this task * * *"; that, "This is your community and * * * it affects you." The remark shown in (a) above really added little or nothing to the argument already made. The court sustained an objection to it. No request for a mistrial was made. There were certainly no such exceptional circumstances as to require the court to declare a mistrial of its own motion. See the discussion, generally, in State v. Laster, Banc, 365 Mo. 1076, 293 S.W.2d 300, certiorari denied Laster v. State, 352 U.S. 936, 77 S.Ct. 237, 1 L.Ed.2d 167. When the statement quoted in (b) above was made, defense counsel objected, asked that the remarks be stricken, that the jury be instructed to disregard them, and that a mistrial be declared. The court sustained the objection and instructed the jury to disregard the statement, but overruled the request for a mistrial. We find no error in that action. The granting or refusal of a mistrial for improper argument lies largely within the discretion of the trial court. State v. Hardy, Banc, 365 Mo. 107,

276 S.W.2d 90, 95; State v. Green, Mo., 292 S.W.2d 283. There was no abuse of the discretion here. The remark was really a continuation of the prior argument. And the prosecution is generally permitted considerable latitude in arguing the necessity of law enforcement and the responsibility resting upon trial juries. See, again, the discussion and the cases cited in State v. Laster, supra. We find no error in the respects thus urged.

■ After the trial defendant expressed a desire for the appointment of other counsel. His original counsel, appointed by the court prior to trial, had performed a highly efficient and commendable job in representing defendant. This case, and others, afford a noteworthy commentary upon the total lack of appreciation which we so often see in such cases. Be that as it may, the court then appointed a member of the Public Defender's Staff to interview the defendant and "prepare affidavit for defendant, if so requested." Defendant's original counsel had prepared a draft of the motion for new trial, furnished it to defendant, suggested that if other grounds were desired they might be added, and that he would be glad to cooperate. Three affidavits are attached to the motion as filed; one of these is of the defendant himself. All three seek to establish the fact that the defendant was at the home of one Alberta Ross during certain hours on January 13, 1959, which would supposedly have made it impossible for him to have committed the Scruggs robbery. We need not consider these affidavits further, for there is no assignment in the motion for new trial concerning newly discovered evidence. And there is no showing whatever, in the motion or in the affidavits or otherwise, that such evidence of the defendant's whereabouts first came to his knowledge after the trial. See, State v. Brotherton, Mo., 266 S.W.2d 712, 718; State v. Stehlin, Mo., 312 S.W.2d 838, 842. Indeed, from the very nature of the purported testimony in the

affidavits, defendant would necessarily have known of the facts, if true, prior to trial.

We find no error in those parts of the record which we consider independently of the motion for new trial. The judgment is affirmed.

All concur.