**STATE of Missouri, Respondent,**

v.

**William MALLORY, Appellant.**

**No. 52993.**

Supreme Court of Missouri, Division No. 2.

Feb. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Cyril J. Clancy, Asst. Atty. Gen., Clayton, for respondent.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

BARRETT, Commissioner.

A jury found the appellant William Mallory guilty of robbery in the first degree and fixed his punishment at ten years' imprisonment.

Appellant's counsel briefed and argued two points, the first is that the information was "so confusing and nonsensical as to not be a plain, concise and definite statement of the essential facts constituting the offense charged and was therefore an unconstitutional denial of due process of law in that it did not notify the appellant of the nature and cause of the accusation against him." While the appellant cites the due process clauses of the state and federal constitutions, (Const.Mo. Art. I, Sec. 10, V.A.M.S.; Fourteenth Amendment Const. U.S.) the only constitutional provision with specific relevance to the claim here is in the Constitution of Missouri, Art. I, Sec. 18(a) that "in criminal prosecutions the accused shall have the right * * * to demand the nature and cause of the accusation." The rule, Criminal Rule 24.01, V.A.M.R., provides that "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. It shall be signed by the prosecuting attorney * * *. It need not contain a formal commencement, a formal conclusion or any other matter not necessary to such statement." In the argument portion of his brief it is said that the information did not allege "who did the robbing and stealing" or "what property was stolen and it is not alleged who the owner of the property was." These latter assertions are not in fact supported by the record, other than differences in dates, names, place and amounts the information here is all but identical with several other informations that have been set forth in full or narrated (State v. Medley, 353 Mo. 925, 185 S.W.2d 633; State v. Kelly, Mo., 107 S.W.2d 19) and it is not necessary to encumber this record by setting forth this one. The language in many respects is medieval and it has been said that "(t)he form of the information is archaic and its continued use is not to be commended" but even so the court in that case held that the "allegations of the information refute the charges that it failed to allege ownership and that the 'injured party' was the owner or agent in charge of the property. * * * The information alleges all essential elements of the crime sought to be charged, and clearly informed him of the nature and cause of the accusation against him. * * * There is no merit in his contention that the information charges that the articles stolen (two revolvers and $1800.00 in money) were used to make the assault and for that reason was fatally defective." And finally the court said, "Actually, defendant's attack upon the information in this particular is no more than an objection to its form; not that it lacks an essential element or that it fails to inform him of the offense with which he was

charged. The form of the information does not in any respect tend to prejudice substantial rights of defendant, and such objection as he may have to alleged imperfections in its form should have been made before his plea of guilty." State v. Benison, Mo., 415 S.W.2d 773, 776. This is the principal case upon which the appellant relies and for the reasons set forth in the quotations the information here is sufficient in form and substance and sufficiently charges the offense of robbery in the first degree by means of a dangerous and deadly weapon. RSMo 1959, §§ 560.-120, 560.135, V.A.M.S.

■ In brief the facts were that about ten o'clock on the evening of May 12, 1966, Rufus Calloway, driving a Black & White Taxicab was dispatched to 913 Woodland. There he picked up two colored boys, one of whom he identified as the appellant Mallory. Mallory got in the front seat, the other boy, Vicky Shockley, got in the back seat. One of the boys told Calloway to take them to 1715 Montgall. When Calloway stopped and "leaned over" to look at the taxicab meter "then one put the gun back to my neck and the one in front, he taken and put it up under my throat." The boy in the back took his billfold containing $26.00 from his pocket and the defendant took $16.00 company money and "my cigarettes." Calloway says that he kept his hands up, that the one in the back seat "told me, he says, he should kill me." Instead "(t)hey made me get out of my shoes" and Mallory "cut my radio wire, where I couldn't call in, and threw the ignition key away," and the two of them walked north on Montgall. These circumstances support the charge and the jury's verdict. State v. Kelly, supra.

■ The appellant's second claim and assignment is that he is entitled to a new trial because the court "committed plain error" in refusing his request for a mistrial because of the "prejudicial and inflammatory testimony by state's witness Park Kaestner that he arrested appellant because *he was a known holdup suspect*." Kaestner was the police officer who arrested the appellant and the statement objected to arose on direct examination: "Q. What reason did you have for arresting this particular individual? A. He fit the description, and he is a known holdup subject." Defense counsel made the general objection "I'm going to object to that, Your Honor." The court said, "The jury will disregard the last answer." Defense counsel then said, "And I am going to move that the court declare a mistrial—and I'm going to move the court discharge the jury and declare a mistrial." The court overruled the latter motion and the trial proceeded.

There is no point in matching statements, it is sufficient to say that the remark is not comparable to the inflammatory argument in State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524, or to the improper appearance and testimony of the juvenile judge in the statutory rape case of State v. Spinks, 344 Mo. 105, 125 S.W.2d 60. It is only fair to say, however, as the court said of the policeman's response "which burglary are you talking about?" that it was an "unresponsive and voluntary answer (and) was improper." State v. Lira, Mo., 372 S.W.2d 80, 82. The difficulty with the appellant's contention, despite the impropriety of the response, is that the isolated statement is taken out of context of the trial. Almost immediately following on cross-examination there were these questions and answers:

"Q. Did you pick him up just generally or for some specific crime?

"A. We picked him up for the specific —this particular holdup.

"Q. Oh, you were looking for Mallory particularly?

"A. We were looking for Mallory and also another suspect by the name of Vicky Shockley.

"Q. And Shockley was not with Mallory at the time you arrested him?

"A. No, sir, they were in Mallory's —or in Shockley's automobile.

"Q. Do you know it to be Shockley's car of your own knowledge?

"A. I do.

"Q. How do you know that?

"A. *Well, I have checked Shockley many a time and Mallory many a time in this particular automobile.*"

\*   \*   \*   \*   \*   \*

(Defense counsel requested the witness to bring in a certain "Special Operation Bureau file.")

"Q. —That is the State Registration Office?

"A. *No, we have a complete file on this boy and—*

"Q. (Interrupting) Well, now, never mind the complete file. Will you bring back the registration of this automobile that you say belonged to Vicky Shockley?"

These matters were all developed on cross-examination (State v. King, Mo., 334 S.W. 2d 34, 39) and the implication of the answers is as plain and injurious to appellant as the officer's response on direct examination. In State v. Statler, Mo., 331 S.W.2d 526, a sodomy case, the 12-year old companion of the victim ran home and reported to his family and there were these questions and responses: "Q. They knew what you meant? A. Because Statler tried to get me before. Q. Beg pardon? A. Tried to bribe me before." As to these statements the court said, quoting in part from other cases, " 'Declaring a mistrial for conduct of a witness or spectator lies largely within the discretion of the trial judge' (State v. Baker, Mo.Sup., 293 S.W.2d 900, 902, and cases cited); and this is true where a voluntary statement is made by a witness. \* \* \* Although it would have been proper and better for the court, on its own motion, to have told the jury to disregard that part of his answer, nevertheless, under all the circumstances, we cannot hold that there was an abuse of discretion in refusing to declare a mistrial." The only specific relief sought by the appellant was a mistrial,

an experienced trial judge instructed the jury to disregard the statement objected to and again, no doubt, considered the prejudicial effect on the motion for a new trial and it may not be said in all these circumstances that the isolated response was so manifestly inflammatory as to demand the granting of a new trial by this court. 98 C.J.S. Witnesses § 356, p. 79; State v. Lira, supra; State v. Statler, supra; State v. Curtis, Mo., 325 S.W.2d 489, 492; State v. Pitchford, Mo., 324 S.W.2d 684, 688–689; State v. Siekermann, Mo., 367 S.W.2d 643, 649–650.

Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.