**STATE of Missouri, Respondent,**

v.

**McNeal VAUGHN, Appellant.**

No. 56988.

Supreme Court of Missouri,
En Banc.

Dec. 10, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Raymond A. Bruntrager, St. Louis, for appellant.

HOLMAN, Judge.

Defendant was charged with the offense of robbery in the first degree by means of a dangerous and deadly weapon. See §§ 560.120 and 560.135, RSMo 1969, V.A.M.S. Upon trial he was found guilty and his punishment fixed by the jury at imprisonment for a term of ten years. Defendant duly appealed. This court has jurisdiction since the notice of appeal was filed prior to January 1, 1972. Mo.Const. Art. V, § 3, V.A.M.S.

The appeal was originally heard in Division One where an opinion was adopted,

but the case was subsequently transferred to Court en Banc because of the dissent of one of the judges. The Division opinion failed of adoption en Banc and the case was assigned to the undersigned. Portions of the factual statement in the aforementioned opinion are here adopted without the use of quotation marks. We reach the same result as did the Division opinion but do so on a point not considered in that opinion.

Eddie Boyd, an off-duty St. Louis police officer, testified that about 10:30 p. m., on July 30, 1970, he and four others were standing on the corner of Clara and Etzel in St. Louis; that a yellow Chevrolet driven by one Levi Battley pulled to the curb and a short conversation took place between Battley and the other occupant of the car; that the car pulled away and returned three or four minutes later with defendant driving; that Battley got out with a sawed-off shotgun and ordered Boyd and the others to give him their shoes and wallets; that Boyd said he didn't have a wallet but did give Battley his shoes, as did Boyd's four companions. Battley threw the shoes into the car and got into the car himself, and defendant drove the car south on Clara. Boyd and two of his friends followed in Boyd's car and next saw the Chevrolet at Chamberlain and Clara where it was stopped and defendant and Battley were changing drivers. Boyd got out and identified himself as a police officer. Battley told defendant to get the shotgun, which defendant did. When officer Boyd saw the shotgun, he (Boyd) fired his gun. Defendant then fired the shotgun twice, missing Boyd, and hitting the car. Battley said to defendant, "Are you crazy," and grabbed the shotgun from defendant, reloaded, and fired one shot. Defendant ran across a vacant lot. Battley got into the Chevrolet and drove off.

Compton and Collier, two of the persons with Boyd, corroborated Boyd's testimony. Banks, another of Boyd's companions, corroborated Boyd as to the occurrence at Clara and Etzel but did not go with Boyd in pursuit of the Chevrolet.

Defendant testified that on the occasion in question he was driving Battley's car and, as they approached Etzel and Clara, Battley told him to pull over to the curb saying he thought he knew the men standing on the corner. After defendant stopped the car Battley took a sawed-off shotgun, which defendant had not seen before, from under the seat, got out of the car, and announced to the victims that this was a stickup and told them to give him their shoes. Defendant asked Battley to "leave those follows alone, they weren't bothering anybody." Battley replied, "Nigger, stay in the car else I will kill you." Battley got back in the car and defendant drove away. Defendant stated he did not intend to rob them or anyone and didn't know a robbery was going to take place. When the car was in the 5500 block of Chamberlain, Battley told defendant to pull over and he, Battley, would drive. They got out of the car. Defendant heard somebody call, "Halt, police officer," and the caller fired two shots, one of which hit defendant in the arm. Defendant had the shotgun in his hand and he fired twice over the heads of Boyd and the others to create confusion so he could run away. He went to a nearby house and asked the occupant if he could call the police. The occupant, one Barbara Goff, who testified and corroborated this portion of defendant's testimony, declined to let him in but called the police herself. The police came and, while transporting defendant to the hospital, were told to return to Goff's house where the victims identified defendant as the person who was driving Battley's car.

Defendant has briefed the point that the court committed prejudicial error in limiting the direct examination of his witness, Carol Vaughn. The background testimony appears in the cross-examination of the

prosecuting witness, Eddie Boyd, as follows:

"Q. (by Mr. LaBeaume). Do you remember when you saw her [Mrs. Vaughn] you told her that you did not think that McNeal Vaughn knew what was going on?

"Mr. Fredericks: I object to the form of the question—its hearsay, and a conclusion on the part of this witness.

"Mr. LaBeaume: I am trying to refresh his memory.

"The Court: I will permit him to answer the question. Overruled. Do you understand the question, Officer?

"Mr. LaBeaume: I didn't complete it, Your Honor.

"The Court: All right, complete your question.

"Q. When you talked to Mrs. Vaughn do you recall telling her you did not think that McNeal knew what was going on, that he was surprised when the robbery took place?

"A. I don't remember talking to her.

"Q. So you don't recall making that statement?

"A. No."

Since it was obvious that defendant had laid the foundation for testimony impeaching the witness, the prosecutor, on redirect examination, apparently decided to endeavor to discredit such anticipated testimony while the witness was on the stand, as appears by the following:

"Q. You were asked on cross-examination whether or not you told Mrs. Vaughn that you didn't think McNeal Vaughn knew what he was doing or knew what was going on at the time of the robbery. Let me ask you flat out—

do you think McNeal Vaughn knew what what was going on at the time of the robbery?

"A. Yes, I do."

When Carol Vaughn, defendant's mother, was called by defendant, the following took place:

"Q. Have you had an opportunity to talk to Officer Boyd after last July 30, 1970?

"A. Yes, sir.

"Mr. Fredericks: May I make an objection and offer of proof?

"The Court: All right:

(The following was at the bench, outside the hearing of the jury):

"Mr. LaBeaume: Your Honor, I am going to ask her—

"Mr. Fredericks: It is my objection and my offer, please.

"Mr. LaBeaume: Oh.

"Mr. Fredericks: In the opening statement defense counsel stated that Mrs. Vaughn would testify that Officer Boyd told her on a prior occasion that in his opinion Vaughn did not know that a robbery was going to take place. I object to any conversation and testimony along that line for the reason that that testimony on a direct basis would be inadmissible as being a conclusion on the part of Boyd and therefore it is improper in an indirect method for the purposes of impeachment which would be at this stage an attempt to impeach the testimony of Officer Boyd.

"The Court: Is that your offer of proof?

"Mr. LaBeaume: He testified on direct examination he didn't talk to Mrs. Vaughn, that in his opinion McNeal Vaughn did know what was going on.

"The Court: That what?

"Mr. LaBeaume: That he did think Vaughn was part of it.

"The Court: That part is objectionable.

"Mr. LaBeaume: It is to impeach his testimony of a prior inconsistent statement.

"The Court: You can ask whether or not she ever talked to the officer, that's as far as you can go. He says he never talked to Mrs. Vaughn. If you want to impeach his testimony along those lines then you may ask it, but what Boyd told her in his opinion would be a conclusion on his part and would not be admissible.

"Mr. LaBeaume: Wouldn't that be a prior inconsistent statement?

"Mr. Fredericks: It is an indirect prior inconsistent statement, but it's inadmissible because it couldn't even be said directly. You couldn't put a witness on the stand and say, 'Did you, in your opinion, think he knew what was going on?' The whole thing is inadmissible."

■■■ We have concluded that the court erred to the prejudice of defendant in excluding the impeachment testimony of Carol Vaughn. It is, of course, well settled that when a witness has testified to a material fact it is proper to admit evidence that he has previously made a statement relating to that fact which is inconsistent with his present testimony. A foundation must first be laid by asking the witness on cross-examination if he made the statement, and obtaining either a denial or an answer that he failed to remember it. An exception sometimes applied to that rule is that the testimony of a witness as to facts may not be impeached by showing that he has previously expressed an opinion which is inconsistent with such facts. See Anno. 66 A.L.R. 294. If, however, the testimony relates to an area which is a proper subject for opinion testimony, such may be impeached by showing a prior expression of

opinion in conflict therewith. 98 C.J.S. Witnesses § 581, p. 555.

In McCormick on Evidence, at p. 63, it is said that "[t]he theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements."

There is considerable conflict in the cases in this state (and elsewhere) as to whether testimony in criminal cases may be impeached by showing a prior statement of opinion which is inconsistent with the testimony of the witness. The following cases indicate that such impeachment is permissible: State v. Baker, 318 Mo. 542, 300 S.W. 699 [5] (1927); State v. Revard, 341 Mo. 170, 106 S.W.2d 906 [10, 12] (1937); State v. Forsha, 190 Mo. 296, 88 S.W. 746 [4] (1905); State v. Hughes, 71 Mo. 633 [2] (1880). On the other hand the opinion in State v. Nave, 283 Mo. 35, 222 S.W. 744 (1920), states emphatically that impeachment testimony must be statements of fact and not of opinion. It appears that the decision may depend somewhat upon whether or not the opinion is based upon facts known to the witness. McCormick, supra, states at pp. 65, 66, that "though many earlier decisions, influenced perhaps by a statement in Greenleaf and a casual English holding at *nisi prius*, excluded impeaching statements in opinion form, the trend of recent holdings is in accord with the common sense view that if a substantial inconsistency appears the form of the impeaching statement is immaterial."

The foregoing will indicate that the impeaching testimony in question was probably admissible in any event. However, we are not required to decide that question. This because the State elected to offer opinion evidence on the very issue involved in the proposed impeaching testimony. The State having offered the explicit testi-

mony of Mr. Boyd that he thought defendant "knew what was going on at the time of the robbery," it would certainly seem that impeaching testimony to the effect that he had previously expressed a contrary opinion would be admissible. This view is supported by the statement in 58 Am.Jur., Witnesses, § 768, p. 420, that "[t]he rule that prior expressions of opinion are not competent to impeach a non-expert witness is apparently subject to limitation where the prior opinion is contradictory of another opinion, and both are based on the same set of facts."

Also, in C.J.S., supra, it is said that "[w]here, however, the conclusion or opinion of the witness as expressed on the stand is relevant and material, it is subject to impeachment by proof of any prior or inconsistent statement, as by proof that the witness had theretofore expressed an opinion at variance with the opinion he expressed on the witness stand." 98 C.J.S., p. 555. While the opinion expressed here would not ordinarily be considered a proper subject for opinion testimony, it was certainly relevant as it expressly related to the only defense offered by defendant.

We also have the view that the State's attorney was in no position to object to the impeaching evidence in view of the fact that he had offered direct evidence on the same subject. Having offered such evidence it would appear that he should have been estopped to take the position, when the impeaching evidence was offered, that "You couldn't put a witness on the stand and say, 'Did you, in your opinion, think he knew what was going on?' The whole thing is inadmissible."

As indicated, we rule that the impeaching testimony was admissible and that its exclusion constituted reversible error.

Other points briefed will not be discussed because they relate to alleged errors that will not likely recur upon a retrial.

Reversed and remanded.

All concur.