STATE of Missouri,
Plaintiff-Respondent,

v.

John Joseph RAPHELD,
Defendant-Appellant.

No. 39871.

Missouri Court of Appeals,
Eastern District,
Division One.

July 3, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Nov. 14, 1979.

Raymond A. Bruntrager, Sr., Robert J. Thomas, Jr., St. Louis, for defendant-appellant.

Courtney Goodman, Jr., Pros. Atty., George R. Westfall, Asst. Pros. Atty., Clayton, John D. Ashcroft, Atty. Gen., Steven D. Steinhilber, Paul Robert Otto, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

SNYDER, Presiding Judge.

Appellant was found guilty by a jury of murder in the first degree and robbery in the first degree. On the murder count the court sentenced him to life imprisonment without eligibility for probation or parole until he has served a minimum of fifty years of his sentence as provided by § 559.011, RSMo Cum. Supp. 1975. On the first degree robbery count he was sentenced to serve a concurrent life term. As grounds for reversal, appellant raises twenty-one points of error.

The judgment is affirmed.

No complaint has been raised as to the sufficiency of the evidence to support the conviction. Therefore, the facts will be briefly stated. Additional facts needed to analyze and resolve the points relied on will be discussed with the issues.

On the evening of February 20, 1976, Judith Atchison, age twenty, was working as night cashier at the "7–11" Express Market at 1083 Woodsmill Road in St. Louis County. Appellant entered the grocery store between 11:30 and 11:40 p. m. He knew Ms. Atchison and frequented the store. He remained in the store, browsing and talking with her, until closing time—12:00 o'clock midnight. When he saw Ms. Atchison counting the day's receipts, he decided to rob her. As she prepared for the next day's business, he went out to his car and got a sheathed bayonet or knife which he customarily carried in the car. He returned and walked to the rear of the store with Ms. Atchison where she began to arrange cans of soda and beer in the coolers. Appellant struck her on the side of the head with a soda bottle, which broke, and then he fell on her, stabbing her five times in the throat and seven times in the heart. He took $450 and fled the store.

In the days following the crimes, leads on several possible suspects were developed. One week after the murder and robbery, St. Louis County police officers picked up appellant for questioning, on information that he had been at the store on the night of February 19, 1976. At the police station appellant admitted he had also been at the store on the night of the crimes. After giving statements which conflicted with facts already known to the officers, appellant was placed under arrest, given *Miranda* warnings and presented with a rights waiver form. Appellant signed the waiver form and, following further questioning, confessed to the murder and robbery. Appellant made an oral statement, a tape recorded confession, a videotaped confession and a videotaped scene-of-the-crime reenactment.

Appellant's first ground for reversal is that the trial court erred in overruling his motion to suppress the tape recorded and videotaped confessions and the videotaped reenactment of the crimes.

■ Appellant was in custody at the time he gave the challenged statements. At a pretrial hearing on a motion to suppress, the state must show, by the preponderance of the evidence, that the incriminating statements were voluntarily given.

While the burden of proceeding is on defendant, once he has made his allegations regarding the inadmissibility of the statements, the burden of proof is on the State to show compliance with the guidelines set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the voluntariness of the statement. In *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), the Supreme Court held that voluntariness of such confession need be proved by a *preponderance of the evidence*, which is the standard we adopt for such cases.

*State v. Olds*, 569 S.W.2d 745, 751 (Mo. banc 1978).

■ When the testimony presented at the hearing on the motion to suppress is in conflict, the trial court must weigh the evidence and judge the credibility of the witnesses. *State v. Lyle*, 511 S.W.2d 817, 818 (Mo.1974); *State v. Crowley*, 571 S.W.2d 460, 464–465 (Mo.App.1978); *State v. Carroll*, 562 S.W.2d 772, 773 (Mo.App.1978); *State v. Hamell*, 561 S.W.2d 357, 363 (Mo. App.1977). "[A]dmission of the confession into evidence by the trial court is a matter of discretion, and we defer to the trial

court's ruling on the credibility of witnesses unless manifest error has been committed. [Citing cases.]" *State v. Crowley, supra,* 464–465.

*Miranda* warnings were given to appellant before any incriminating statement was made. The warnings were repeated before each taped confession or reenactment. A rights waiver card was given to appellant before the confessions were obtained and was signed by him.

■ On the issue of voluntariness, appellant contended at the pretrial hearing, at trial, and now, on appeal, that physical force was used to obtain his confessions. The interrogating officers recounted in detail the circumstances surrounding the confessions and repeatedly denied striking, threatening or coercing appellant, or telling him what to include in his confessions. Appellant presented testimony by a correctional officer and jail nurse that his upper body appeared to be bruised following his arrest. As the cases cited above note, when the evidence on voluntariness is in conflict, the trial court weighs the evidence on and judges the credibility of the witnesses. "[W]here the testimony conflicts as to whether the confession was voluntary, admission of the confession into evidence by the trial court is a matter of discretion. [Citing cases.]" *State v. Cook,* 557 S.W.2d 484, 488 (Mo.App.1977). Further, in meeting its burden of proving that the in-custody statements were voluntarily given, "the State does not have to negate every possible circumstance which could present a fact issue. [Citing cases.]" *State v. Hamell, supra,* 363. The trial court did not err in determining the state had met its burden of proving by a preponderance of the evidence that the confessions were voluntary. The number, consistency and detail of the statements, the officers' conduct before and after the questioning, the absence of complaint to other officers and an assistant prosecutor who assisted in the videotaping but was not present during the supposed incidents of coercion, and appellant's recorded statements that no threats or promises were made to induce the confessions all

support the trial court's finding of voluntariness.

■ Appellant further contends the confessions were inadmissible because he did not have counsel present. When a defendant has been given full and proper advice as to his rights, and knowingly and intelligently waives them, the fact that he did not have counsel present at the time the statements were given does not render them inadmissible. *State v. Williams,* 566 S.W.2d 841 (Mo.App.1978).

■ Appellant also argues the presence of an assistance prosecutor, Gordon Ankney, during the videotapings rendered them inadmissible because the prosecutor questioned him without revealing his position or giving appellant his rights. Appellant's argument completely ignores the testimony of Ankney and Police Officer Neidenberg. Neidenberg, the technician in charge of videotaping equipment, testified appellant asked him who Ankney was. Neidenberg told appellant Ankney was the prosecuting attorney. Ankney testified appellant asked him, before the statements at which he was present were taken, if he was the prosecutor. Ankney told appellant that he was. Neither authority nor logic supports appellant's argument that Ankney was required to give appellant *Miranda* warnings, in addition to those given by the police, before he could question appellant at the videotaping.

The circumstances surrounding the confessions and reenactment were thoroughly developed at the suppression hearing. At trial, appellant, the interrogators and the jail personnel were examined and cross-examined in exhaustive detail. All of appellant's statements were played for the jury. They could determine for themselves whether appellant's behavior was consistent with a coerced or voluntary confession. They also had the opportunity to view the conduct and demeanor of the witnesses. The jury was properly instructed on the issue of voluntariness (then MAI–CR 3.44) and their verdict confirms the trial court's determination that the confessions were voluntary and appellant's own version of the crimes.

■ Appellant was charged with capital murder. Before trial he filed a motion to dismiss the indictment on the ground that the capital murder statute (§§ 559.005 and 559.009, RSMo Cum. Supp. 1975) was unconstitutional. The court stated in chambers prior to voir dire that it intended to instruct the jury on murder in the first degree, the penalty for which was life imprisonment with a minimum of 50 years without probation or parole. The motion to dismiss was overruled. At trial the jury was given the murder in the first degree instruction (then MAI–CR 6.02 "Murder: First Degree"). No capital murder instruction was given. The jury returned a verdict of guilty of murder in the first degree. Punishment was set by the court, as the state, after filing an amended information in lieu of indictment, proved two prior felony convictions. Appellant was sentenced to life imprisonment without eligibility for probation or parole until he has served fifty years.

Appellant's argument appears to be that the only penalty for capital murder was death and that the capital murder instruction and possible death penalty should have been submitted to the jury. He also states in his argument that, in view of the fact that the death penalty was later declared unconstitutional in *State v. Duren*, 547 S.W.2d 476 (Mo. banc 1977) the indictment should have been dismissed. (*Duren*, id., was decided March 15, 1977; appellant was tried and convicted in January of that year.)

This latter argument is illogical because *Duren* was decided nearly two months after appellant's trial. In any event, *Duren* held that the viability of § 559.011, RSMo Cum. Supp. 1975 precluded "any argument that 'capital' murder cannot be a crime because no penalty therefor is provided." *Duren*, id., 481. Appellant was charged under a valid statute.

■ It is not clear from the record why the trial court decided to proceed at trial and instruct the jury on murder in the first degree when capital murder was charged. At the date of trial the death penalty had not yet been declared unconstitutional.

However, under § 559.009.2, RSMo Cum. Supp. 1975 and MAI–CR 6.02 ("Capital Murder," effective September 28, 1975), its Notes on Use, and "caveat (a)" and the evidence produced at trial (murder in the course of a robbery), an instruction on murder in the first degree would have been required in this case even if capital murder had been submitted. Further, even if capital murder had been submitted and the jury had returned the death penalty, § 559.013, RSMo Cum. Supp. 1975 provided for a resentencing hearing in the event the death penalty was later declared unconstitutional. Thus, appellant would have been resentenced to the exact same sentence he did receive. No prejudice resulted.

Appellant next challenges the trial court's action in overruling his oral motion to suppress in-court identification of him by state's witness Phoebe Dyer. The basis for appellant's motion was the showing of several mug shots to Ms. Dyer. Apparently (it is unclear from his counsel's comments on the motion) the police singled out appellant's photo and told her he had confessed. The deposition of Ms. Dyer, in which these facts were developed, has not been included in the record on appeal. Appellant's counsel stated, "I could object to any . . . statements . . . as to any relationship between the defendant and the man she saw out there [the Express Market] that day [of the murder]." The court overruled the motion on the understanding that Ms. Dyer was not going to say she saw the appellant there that night.

Ms. Dyer had known appellant for some time before the murder. She was at the store late on the night of the murder and saw a man about 5'8" tall, with white-blonde hair and a stocky build. He was wearing a tan leather or vinyl coat. She never saw his face, as the man was standing with his back to her. While this man matched the features of appellant and was wearing a coat similar to the one he allegedly wore that night, Ms. Dyer never identified appellant as the man she had seen, nor was she allowed at trial to compare appellant's physical characteristics with that man. Ms. Dyer testified she did

not recognize the man she saw at the store as anyone she knew.

Two points rebut appellant's argument. First, the basis for Ms. Dyer's description of the man at the Express Market was clearly her observations of that night and not any improper photo identification procedure. Second, no prejudice to appellant could have resulted from her testimony because she did not identify appellant as that man. Appellant wished to suppress any in-court identification and none, in fact, took place. Compare, *State v. Daney*, 541 S.W.2d 35 (Mo.App.1976).

■ Appellant's fourth point of error raises the trial court's refusal to strike the testimony of Dr. Chase, the pathologist who examined the victim's body and prepared the medical report on her death.

In her preliminary report, which was sent to the prosecutor and provided to appellant pursuant to Rule 25.32(A), Dr. Chase had *noted two small stab-like lesions, "round like an ice pick"* on the victim's back and a slightly larger, similarly shaped mark on her abdomen. Appellant's counsel in his opening statement to the jury stated that the pathologist's report "will prove to you conclusively that whatever killed the girl or whoever killed the girl, killed her with two (2) instruments. One (1) an ice, or ice pick, and the other a sharp cutting instrument." The importance of this "second weapon" argument was that appellant, in his confessions, had stated that he had only used one weapon—a bayonet. If two weapons had, *in fact, been used, doubts as to the accuracy* and voluntariness of the confession might have been raised.

Dr. Chase appeared at trial as the state's witness and detailed her opinion as to the cause of Ms. Atchison's death. On cross-examination appellant attempted to bring out details about the three "ice-pick like" wounds. Dr. Chase, in essence, stated that while she had described these marks as "ice-pick like marks" in her preliminary report, in her final anatomical diagnosis she had concluded, on the basis of further tests and examinations, that they were abrasions. (In her final draft on the report she also had scratched out "ice-pick like marks" and inserted "abrasions only" and "contusions only.")

During cross-examination it was discovered that neither the state nor appellant had copies of the two page final report Dr. Chase was using in her testimony. (This two page "final anatomical diagnosis" was prepared sometime after the preliminary report had been given to the prosecutor.) At a colloquy at the bench, appellant requested Dr. Chase's testimony be stricken because he had not received the final report. The motion was denied. The court offered him, instead, the opportunity to recall the doctor the next day, after he had studied the additional pages, and a continuance, after the state had closed its case, to secure additional expert witnesses or other evidence to challenge the report. Appellant declined these offers.

Rule 25.32(A) places an obligation on the state to disclose to a defendant's counsel, upon written request, materials and information "within its possession or control designated in said request."

Since the rule's adoption the cases have held that both negligent and bad faith failures to provide requested information are subject to sanction. See, *State v. Dayton*, 535 S.W.2d 469, 477 (Mo.App.1976). Were this a case of negligent nondisclosure of information or documents within the prosecution's possession, the question of prejudice to appellant from its suppression would have to be closely examined. However, the record shows beyond any doubt that the two page final anatomical diagnosis was not in the possession or control of the prosecutor. Even if possession or control are construed to mean knowledge of the report's existence [*State v. Chambers*, 550 S.W.2d 846, 850 (Mo.App.1977)], the record reveals that the state was unaware of the existence of these two pages until they were "discovered" on cross-examination of Dr. Chase. Therefore, because the report was not in the possession or control of the state, no duty to disclose could arise. The imposition of any sanction under Rule 25.45 would have been improper because there had been

"no failure to comply with an applicable discovery rule." The trial court did not err in overruling the motion to strike or appellant's subsequent motion for a mistrial.

Appellant next challenges the trial court's overruling his objections to the state's cross-examination of two of his witnesses. In each instance, the prosecutor asked the witness if he remembered previously testifying in the case (at a hearing on the motions to suppress). Each witness did so remember and was then asked if he recalled testifying differently on that previous occasion. Witness Fields responded he had testified differently; witness Kolar could not remember. Witness Fields was given an opportunity to explain the discrepancies in his descriptions of a man he had seen at the Express Market the night before the murder. Once Kolar replied that he could not remember, the topic was dropped. In both instances, appellant objected to the manner of the cross-examination, claiming the proper foundation had not been laid for these impeachment attempts.

> It is, of course, well settled that when a witness has testified to a material fact it is proper to admit evidence that he has previously made a statement relating to that fact which is inconsistent with his present testimony. A foundation must first be laid by asking the witness on cross-examination if he made the statement, and obtaining either a denial or an answer that he failed to remember it.

State v. Vaughn, 501 S.W.2d 839, 842 (Mo. banc 1973).

 Both witnesses were told the occasion of their prior remarks, and both remembered testifying on that occasion. They then received an accurate account of their former testimony. Fields admitted the inconsistency. At that point, no formal introduction of the prior statement was necessary or permissible. See State v. Earvin, 539 S.W.2d 615 (Mo.App.1976). When Kolar could not recall his former testimony, the state had the option of introducing evidence showing he had made the previous inconsistent statement. Aboussie v.

McBroom, 421 S.W.2d 805, 807 (Mo.App. 1967). The issue, however, was dropped. The foundation requirements set forth by Vaughn, supra, were met and no error committed by allowing this manner of impeachment.

 As his sixth point of error, appellant argues the trial court erred in overruling his objection to testimony by witness Norma Ferguson, the deceased's sister, that appellant had asked Ms. Atchison for dates. The matter has not been preserved for review because appellant failed to object when the matter was first broached.

The prosecutor asked Ms. Ferguson if she had "ever heard him [appellant] ask Judy for a date? And I'm talking about in your presence?

A: Yes.

Q: To your knowledge, had Judy ever dated him?

A: No."

No objection appears. Later objections to similar questions were both sustained (leading question) and overruled (materiality and relevancy).

Assuming, but not deciding, that the testimony was inadmissible, any objection appellant might have had to disclosure of this fact was waived by his failure to object when the question was first asked and answered. Appellant's first objection to the information that he had tried to date the victim came long after the question and answer first revealing the fact.

> A claim of prejudicial error concerning the admission of testimony to which no objection was made at the earliest opportunity after grounds for the objection became apparent cannot be considered on appeal because it is not properly preserved for review. [Citing cases.]

State v. McClure, 504 S.W.2d 664, 668 (Mo. App.1974).

 In his seventh assignment of error, appellant challenges the trial court's refusal to grant his motion for a mistrial after prosecution witness Curran was asked if he was assaulted by the police after being

brought in for questioning after appellant's arrest. Appellant's objection to this question was overruled. A colloquy at the bench followed, after which the objection was sustained, the motion for mistrial denied and the jury instructed to disregard the question and answer (although no answer appears in the record).

> The superior opportunity of a trial judge to assess whether occurrences at trial prejudice a defendant's rights has often been recognized, and an appellate court may not disturb the lower court's denial of a motion for mistrial unless the ruling constitutes an abuse of discretion. [Citing cases.]

*State v. Sykes,* 571 S.W.2d 456, 458 (Mo. App.1978). No abuse of discretion has been demonstrated.

■ Appellant next assigns as error the admission into evidence of a procedure manual used by the St. Louis County Police Department in videotaping statements. Appellant referred to the manual in an attempt to show: (1) the proper procedure was not used in identifying Assistant Prosecutor Ankney at the videotaping, and (2) appellant was improperly "led" by the questioning during the videotaping.

During his cross-examination of Officer Neidenberg, the videotape technician, appellant's counsel asked Neidenberg if he could obtain a copy of the manual used in videotaping. At the court's direction, the officer left the stand and later returned with a copy of the manual. He was cross-examined extensively on its contents, appellant's counsel frequently referring to specific section numbers. At the close of the cross-examination, the state attempted to offer the manual into evidence. Appellant's objection to its introduction was sustained. The court then asked the prosecutor if there were certain portions of the manual he wanted introduced. Appellant again objected, this time on the ground no proper foundation had been laid to show this manual was used during appellant's confession. The objection was sustained, the court commenting that for the manual to be introduced, the state would have to produce the detective who conducted the questioning and have him identify the manual as the one used during the videotaping. The prosecutor asked if he could redirect Officer Neidenberg from certain sections of the manual to show the general procedures of the department for making a videotaped statement. This was allowed, over appellant's objection, and sections of the manual were read by Officer Neidenberg.

At the close of all the evidence the state again attempted to introduce the manual. Appellant objected and the trial court decided, "It will be received only for purposes of final argument, and you can only refer to those portions read to the jury, and nothing else." No comment was made on the manual, or on the sections previously read to the jury, in the state's closing argument.

Appellant has failed to demonstrate any prejudicial error in the court's limited admission. No comment was even made on the manual. In any event, the evidence could not have harmed appellant; his own counsel closely questioned Officer Neidenberg on the procedures used. The jury saw the videotapes and read the transcripts of the statements. They were free to decide on the basis of the testimony whether the proper procedures were followed.

■ Appellant raises two points of error with respect to the testimony of defense witness Delores Harkness, nurse at the St. Louis County Jail. First he claims error in allowing her to testify on cross-examination, over his objection, that he had a rash on his shoulders and "ringworm" on his neck. Appellant argues this testimony was irrelevant and immaterial and never connected to the bruises he claimed to have suffered from an alleged beating at the hands of the police. The state's purpose in asking these questions was to show that the bruises or marks on appellant's shoulders and torso were not bruises but some other physical ailment.

The answer to the "rash issue" is that appellant, himself, brought out testimony on this issue on direct examination. As to the testimony on ringworm symptoms, the prosecutor stated his purpose was to show

those symptoms' similarity to the rash. While these symptoms were first noted at a time somewhat distant from appellant's arrest, they were in the area of his body he claimed was beaten.

▇▇▇▇ The determination of the materiality and relevancy of evidence is a matter within the discretion of the trial judge. [Citing cases.] Evidence is relevant if it tends to prove or disprove a fact in issue or corroborates relevant evidence bearing on the principal issue. [Citing cases.] It is settled that doubts as to the relevancy of evidence should be resolved in favor of the admissibility of the evidence. [Citing cases.]

*State v. Proctor*, 546 S.W.2d 544, 545 (Mo. App.1977).

No abuse of discretion has been shown. The testimony was arguably relevant in that it tended to discount the possibility that appellant was beaten and bruised and that his confession was involuntary. The jury could determine the effect the difference in time should be given in weighing the evidence.

▇▇▇▇ Appellant's second point of error with respect to Ms. Harkness' testimony is that the trial court erred in refusing to allow him to question her as to what she had been told to include in her record of a patient examination. In the record of her March 4, 1976 examination of appellant, no mention of any bruises or police beatings was made. Her March 22, 1976 report did include mentions that appellant claimed to have been beaten and bruised by the police.

Appellant's purpose was to prove that between March 4 and March 22 Harkness had been told by her supervising doctor to include allegations of police abuse in her medical report. His purpose thus was not simply to show a conversation had taken place, but to show the contents of that conversation—specifically, what the supervising doctor had said to Ms. Harkness. Such testimony has consistently been categorized as hearsay and excluded from evidence. See, *State v. Trotter*, 536 S.W.2d 877 (Mo.App.1976). The court's ruling that this testimony was hearsay was correct.

As his eleventh point of error appellant contends the trial court erred in allowing witness Curran to testify that appellant said he used to date the girl in the Express Market. Curran testified that in December of 1975 he and appellant were at the Express Market. Appellant had gone into the market, Curran remaining in their auto, and when he returned, he stated he knew the girl and had dated her in high school. Curran stated appellant indicated he was referring to the girl "behind the counter." On cross-examination it was developed that Curran was not sure who appellant was referring to since Curran could not see the girl from the auto.

▇▇▇▇ As noted above, determinations as to materiality and relevancy of items of evidence are directed to the sound discretion of the trial court. Appellant's familiarity with the victim would certainly be relevant to the motive for her murder, since the chances of escaping detection and arrest for a robbery are minimal when the victim knows the robber. No abuse of discretion has been shown; the jury could determine the likelihood that the girl referred to was, in fact, the victim.

As his twelfth point of error, appellant challenges the action of the trial court in overruling nine of his objections made when the state cross-examined him. Several principles of the law of cross-examination of defendants who take the witness stand refute appellant's contentions.

▇▇▇▇ First, three of the objections were to cross-examination topics directly covered and specifically opened up by appellant's testimony-in-chief. In his direct testimony appellant stated he was married, denied ever asking Ms. Atchison for a date and denied he was in severe financial difficulties at the time of the crimes. The rule is well settled that a defendant " 'may be cross-examined with reference to any subject matter concerning which he gave testimony.' " *State v. Scown*, 312 S.W.2d 782, 787 (Mo.1958), quoting *State v. Dees*, 276 S.W.2d 201, 207 (Mo.1955). Therefore, questions as to whether appellant was mar-

ried in late 1975 and early 1976, whether he asked the victim for dates, and whether he was in financial difficulties at the time of the robbery and murder were directly within the scope of direct examination, and the objections that they were not were properly overruled.

Second, the statute making a defendant a competent witness at his trial, § 546.260 RSMo 1969, specifically provides that a defendant who takes the witness stand "may be contradicted and impeached as any other witness . . .." Questions designed to test the defendant's memory or the accuracy of his testimony are not subject to the requirement that they be limited to the scope of his direct examination. See, e. g., *State v. Abbott*, 245 S.W.2d 876 (Mo. 1952). While the prosecutor should be limited to factual areas related to the defendant's testimony-in-chief, questions to test his credibility as a witness are proper under the statute. See, *State v. Phillips*, 480 S.W.2d 836 (Mo.1972); *State v. Brown*, 312 S.W.2d 818 (Mo.1958). It is also clear that a defendant who takes the stand may be impeached by evidence of a previous confession which is inconsistent with his testimony on the witness stand. *State v. Kaufman*, 254 S.W.2d 640 (Mo.1953).

This is precisely the case with the remaining objections made at trial and raised here. Appellant testified he did not commit the crimes and that he was coerced and beaten until he confessed. He thus directly and purposefully put the accuracy and truthfulness of the confessions in issue and submitted himself to cross-examination on the statements contained in the confessions. The state could test appellant's credibility and impeach him on the basis of those prior inconsistent statements. The objections were properly overruled.

Appellant asserts the trial court erred in refusing to admit into evidence pleadings filed in a federal district court lawsuit brought by him to recover damages from the St. Louis County police officers who allegedly beat him. Specifically, appellant attempted to introduce his complaint and the officers' motion to dismiss and their memorandum of law in support of that motion.

Appellant argued at trial, and now on appeal asserts, that the motion to dismiss and supporting memorandum contained an admission by the officers that they had beaten him. At trial appellant read language to the court from the memorandum which stated ". . . not every assault by a law enforcement officer comes under the Civil Rights Act."

From the record, it appears the officers' motion relied upon lack of jurisdiction and the failure of the claim to state a cause of action. The quoted language does not admit an assault, or even infer an assault. It is clearly a statement of the sort frequently found in pleadings, and even judicial opinions, which may seem to assume, solely for the purposes of argument, the truth of a certain statement. No abuse of the trial court's considerable discretion in the admission and rejection of evidence has been shown.

As his fourteenth point of error, appellant charges the trial court erred in giving Instruction No. 5 (then MAI–CR 6.02 "Murder: First Degree," effective March 1, 1975) because it was based on unconstitutional statutory authority and because it was in direct contravention of the evidence.

The first point has necessarily been disposed of by the discussion of appellant's second point of error. It is sufficient to note appellant was charged under a valid statutory section.

As to appellant's second point under this charge of error, the pathologist's report and testimony established knife wounds as the cause of death. Appellant contends only "stabbing" should have been submitted and that it was error to also submit "cutting" because there was no testimony that "cutting" was the cause of death or that two methods had caused the death.

This argument is specious. Webster's Third New International Dictionary defines "cut" as "to penetrate with or as with an edged instrument; cleave, pierce: make an

incision in. . . ." This was precisely the substance of the pathologist's testimony as to the cause of death. The instruction was supported by the evidence and appellant's argument is rejected.

Appellant next challenges the trial court's use of "offense" instead of "offenses" in the first paragraph of Instruction No. 4 (then MAI–CR 2.20) and its failure to include the optional language "on any Count against him" and "on that count" in paragraph three of the instruction.

The argument that this instruction would have misled and confused the jury into believing "that the instruction implied that a finding of guilty on one count required a finding of guilty on the other" count is untenable in light of the fact that then MAI–CR 2.70 was also submitted to the jury. Because all of the instructions must be read as a whole and construed together [*State v. Blockton*, 526 S.W.2d 915 (Mo.App. 1975)], this argument must be rejected. Compare, *State v. Ross*, 523 S.W.2d 841 (Mo.App.1975), where then MAI–CR 2.10 was given and failed to include a reference to separate counts. The trial court's submission of MAI–CR 2.70 was held to have removed any potential prejudice or error.

Appellant's sixteenth, seventeenth and twentieth points of error are taken together, as they raise the claim that the trial court erred in refusing to declare a mistrial following certain comments by the prosecutor in closing argument. The sixteenth point refers to a comment that witness Ankney, the assistant prosecutor, was justified in feeling the way he did during cross-examination by appellant. The seventeenth point raises the state's comment that appellant's defense was "garbage." Appellant's twentieth point calls the court's attention to the prosecutor's statement that if the jury acquitted appellant it "might as well put a note on your verdict that you want the other four [state witnesses] indicted [for perjury] because that is what it [acquittal] will absolutely mean." In each instance, appellant's objection was sustained, the remark stricken, the jury instructed to disregard the comment and the request for mistrial denied.

The declaration of a mistrial is a drastic remedy to be granted only when the incident complained of is so grievous that its prejudicial effect can be removed in no other manner. *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970).

[10–15] Whether the remarks of counsel in closing argument necessitate the declaration of a mistrial rests largely with the discretion of the trial court and appellate courts will not interfere unless the record shows an abuse of such discretion to appellant's prejudice. *State v. Wintjen*, 500 S.W.2d 39, 42[1] (Mo.App. 1973). Every instance where a prosecutor exceeds the limits of legitimate argument is not a cause for mistrial. . . . Generally, if the prejudicial effect can be removed through other corrective action and the trial court undertakes such action, mistrial need not be granted. [Citing cases.]

*State v. Neal*, 526 S.W.2d 898, 903 (Mo.App. 1975).

Having thoroughly studied the record, this court cannot say that the possible prejudicial effect of these comments could not be removed by the actions taken by the trial court, or that, as a matter of law, the trial court abused its discretion in refusing to grant a mistrial. No reversible error has been shown.

Appellant's eighteenth point challenges the state's comment in closing argument that "you know he's a guilty man and lying to save his life." No objection was made to this comment.

Objections to allegedly improper arguments or comments must be made at the time of argument to properly preserve the point for appellate review. *State v. Hatten*, 561 S.W.2d 706, 713 (Mo.App.1978). "A trial court cannot be charged with error for reasons not timely presented so that remedial action may be taken during the trial, if required. [Citing cases.]" *State v. Hatten*, id., 713.

No request has been made to review the comment under the plain error doctrine,

Rule 27.20(c), but, *sua sponte*, the matter will be considered.

■ While a prosecutor may not express to the jury in his closing argument his belief in the defendant's guilt in such a manner that the comments imply knowledge of facts not in evidence pointing to guilt, " 'it is equally well settled that a statement by the prosecuting attorney in argument indicating his opinion that the accused is guilty, where it is apparent that such opinion is based on the evidence in the case, is permissible. . . .' " *State v. Haynes*, 528 S.W.2d 11, 13 (Mo.App.1975), quoting *State v. Chester*, 445 S.W.2d 393, 399[8, 9] (Mo.App.1969).

■ Here, the prosecutor's comment expressly relied on two "slips" in appellant's testimony (his description of a customer at the store and his knowledge of the positions of the victim's body), "plus the overwhelming credibility of the state's witnesses." The opinion of guilty was "based on the evidence in the case" (*Haynes*, id.), rather than on facts not in evidence.

Appellant also argues that the portion of the comment "to save his life" improperly suggested to the jury that appellant could receive the death penalty and was lying to avoid execution. While the prosecution's choice of language may have been imprudent, it seems apparent that the intended meaning of the phrase was "to save himself" and that the phrase would have been so interpreted by the jury.

Appellant next charges that the court erred in allowing the prosecutor to argue that state's witness Dyer had never said that appellant was not the man she had seen in the store on the night of the crimes. The restrictions on Ms. Dyer's testimony were set out in discussion of appellant's third claim of error.

■ In his closing argument, appellant's counsel asserted that Ms. Dyer "never said . . . that this was the man that was in there that night, and she knows it. . . ." The state's objection was overruled and the jury instructed to recall the evidence. The prosecutor's comment was in response to appellant's argument and was retaliatory. A prosecutor may retaliate to an issue raised by a defendant's closing argument, even if his comment would otherwise be improper. *State v. Swenson*, 551 S.W.2d 917 (Mo.App.1977). The trial court has considerable discretion in permitting retaliatory arguments invited by a defendant. *State v. Gordon*, 527 S.W.2d 6, 10 (Mo.App. 1975). No abuse of that discretion has been shown.

In his twenty-first, and final, point of error, appellant challenges the trial court's action in sustaining the state's objection to his comment that state witness Beasley had said appellant was not the man he had seen at the store.

■ In his closing argument appellant's counsel stated, "When I asked him [Beasley] if this was the man that was in there that night, or is this the man that you saw . . . is this the murderer? What did Mr. Beasley say? He said no, sir." The state's objection was sustained.

Mr. Beasley was in the Express Market shortly before Ms. Atchison's murder. He assisted the police in drawing a composite sketch of a man he had seen in the store. After appellant's arrest, Mr. Beasley was shown appellant's photograph. On cross-examination he stated he told the police at that time that the photo "didn't blend in" with his description. When asked if he "told him it wasn't the man?", he replied, "I didn't say it wasn't the man." On both direct and cross-examination Mr. Beasley repeatedly stated appellant did not appear to be the same man he had seen, but that he could not "really say" whether appellant was or was not the man. Beasley never testified that appellant was not the man he had seen. Appellant's comment was not supported by the evidence nor was it a reasonable inference from the evidence. The objection to his comment was properly sustained.

No error having been shown, the judgment is affirmed.

SMITH and GUNN, JJ., concur.