**Calvin HANSON, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 13200.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 26, 1984.

Motion for Rehearing or to Transfer
Denied April 16, 1984.

Application to Transfer Denied
May 15, 1984.

Margaret E. Branyan, Frank V. DiMaggio, Asst. Public Defenders, Springfield, for movant-appellant.

John Ashcroft, Atty. Gen., David C. Mason, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Presiding Judge.

The movant was charged with having committed capital murder under § 559.005 (S.C.S.H.C.S.H.B. No. 150, approved June 23, 1975, effective September 28, 1975; repealed L.1977 H.B. 90 § 1, effective May 26, 1977) by stabbing to death Ollie Adkins on July 5, 1976. After a three-day trial, the case was submitted to the jury on April 13, 1977. The trial court instructed the jury on capital murder, second degree conventional murder (§ 559.020, RSMo, transferred to § 565.004) and conventional manslaughter (§ 559.070, RSMo, transferred to § 565.005). The jury returned a verdict of guilty of capital murder. Under § 559.011 (now repealed) he was sentenced to life imprisonment without eligibility for probation or parole for 50 years. The failure of the trial court to instruct on first degree felony murder (§ 559.007 effective September 28, 1975; now repealed) forms the principal basis for movant's contention the 27.-26 court erroneously denied his demand for relief.

The movant's conviction was affirmed on appeal in *State v. Hanson,* 587 S.W.2d 895 (Mo.App.1979). In this proceeding, he seeks to set aside his conviction by a motion under Rule 27.26. The opinion referred to contains a full resume of the facts. A brief summary is sufficient for the consideration of this appeal. On July 6, 1976, Adkins, with $200 in his billfold, left his home in Pacific to attend to business in Springfield. At approximately 6:45 p.m. that day, a witness saw an individual who was obviously Adkins engaged in a struggle with a man the witness could not identify. Shortly thereafter, Adkins' body was

found near the scene of the struggle. He had suffered nine stab wounds to his chest and abdomen. His billfold was gone. After remarkable investigative work by law enforcement officers, the movant was arrested on the parking lot of a bar at approximately 1:00 a.m. on July 7, 1976. There was no evidence he had Adkins' billfold or the $200. However, he had a sheath knife taped to the lower part of his right leg. The knife bore fresh human blood, type A, with a PGM factor of 1. This corresponded with the blood of the victim. Movant had blood type O. There was additional evidence that established the verdict was supported by the evidence as determined by the trial court and by this court on direct appeal.

By his first point, movant contends the trial court erred in not instructing on first degree felony murder and thereby he was denied his constitutional right of due process. He contends this instruction was required by MAI–CR 6.02 (effective September 28, 1975) and the Notes on Use thereto. As stated in his brief, he relies upon cases from *State v. Rapheld,* 587 S.W.2d 881 (Mo.App.1979) through *State v. Daugherty,* 631 S.W.2d 637 (Mo.1982). For the purpose of this appeal, it will be assumed that at the defendant's trial, an instruction on first degree felony murder—robbery (MAI–CR 6.19, effective September 28, 1975) was required as set forth in the Notes on Use to MAI–CR 6.02 (effective September 28, 1975).

 The rule generally applicable is that instructional error is trial error not cognizable in a Rule 27.26 proceeding. *Fulsom v. State,* 625 S.W.2d 249 (Mo.App. 1981); *Stewart v. State,* 578 S.W.2d 57 (Mo.App.1978). An exception exists only when such an error rises to the level of constitutional error. *Swearingin v. State,* 629 S.W.2d 560 (Mo.App.1981). It is also well established that "[t]rial errors cannot be brought into the scope of Rule 27.26 by simply alleging as a conclusion that they resulted in an unfair or impartial trial, or that they affected constitutional rights."

*O'Neal v. State,* 486 S.W.2d 206, 208 (Mo. 1972).

The movant recognizes these general principles. However, he argues the error in question is such a constitutional error. He relies upon *State v. Zweifel,* 615 S.W.2d 470 (Mo.App.1981). He also cites *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), and language dealing with instructions on lesser included offenses, such as that contained in *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973).

 By the courts of this state, a constitutional error is generally defined as "one that is so glaring as to cause a substantial deprivation of the right to a fair trial." *Stewart v. State,* supra, at 59. Also see *Edwards v. State,* 535 S.W.2d 124 (Mo.App. 1976). Within that general statement, the following are examples of instructional errors held not to be a basis for relief in a 27.26 proceeding. Failure to instruct on good character. *Brown v. State,* 492 S.W.2d 762 (Mo.1973). The omission of the terms anger and fear in a second degree murder instruction. *Swearingin v. State,* supra. The failure to instruct on the necessity of determining the voluntariness of an oral statement. *State ex rel. Tindall v. Peters,* 516 S.W.2d 532 (Mo.App.1974). The failure to instruct on self-defense. *Williams v. State,* 550 S.W.2d 821 (Mo. App.1977). A deviation from MAI–CR 1.02. *Stewart v. State,* supra. Failure to instruct that there is no adverse inference from a defendant's failure to testify. *Thomas v. State,* 485 S.W.2d 413 (Mo. 1972). It has also been declared, "[t]he failure of the trial court to give a lesser included stealing offense instruction in a robbery case is instructional error to be raised on direct appeal and is not cognizable in a Rule 27.26 proceeding." *State v. Arnold,* 632 S.W.2d 54, 55 (Mo.App.1982). In construing MAI–CR 6.02 and the Notes on Use thereto in considering a failure to instruct on second degree conventional

murder or manslaughter, it has been declared, "[i]n any event, the failure to give such instructions would constitute at most mere trial error which would not be cognizable as part of a post conviction proceeding under Rule 27.26." *Fulsom v. State*, supra, at 251.

No decision of this state has been found expressly defining such a constitutional error in the terms of instructional error. However, unless an instructional error is plain error within the meaning of Rules 29.12 and 30.20, it is difficult to rationalize that such error could be constitutional error. Upon this basis, decisions defining instructional error in the terms of plain error may be considered in determining an issue of alleged constitutional error. *State v. Zweifel*, supra. However, this opinion should not be construed as holding that plain errors are invariably equated with constitutional errors. An instructional error is plain error when "the instruction misdirected or failed to instruct the jury upon the law so as to cause manifest injustice or miscarriage of justice." *State v. James*, 641 S.W.2d 146, 148 (Mo.App.1982). Also see *State v. Harris*, 636 S.W.2d 403 (Mo.App.1982).

The question presented by the defendant's first point has been considered under the plain error doctrine. In *State v. Bolder*, 635 S.W.2d 673, 693 (Mo. banc 1982), cert. denied, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983), the court stated as follows:

> After careful consideration we conclude that there has been no 'manifest injustice or miscarriage of justice,' id., that would necessitate reversal. The trial court instructed the jury on second degree murder and manslaughter, and the jury thus had the opportunity to convict appellant of a lesser offense. See *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Moreover, the evidence in this case would not support an instruction on first degree (felony) murder because none of the five enumerated felonies, § 565.003, RSMo 1978, was present. Due process therefore is not

abridged. *Hopper v. Evans*, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982).

After a conviction of murder in the first degree, in considering asserted plain error in the failure to give instructions on murder in the second degree and manslaughter, the court said: "We have reviewed the case and do not deem that manifest injustice or miscarriage of justice resulted from the failure to give these instructions." *State v. Kurtz*, 564 S.W.2d 856, 862 (Mo. banc 1978).

In *State v. McIlvoy*, 629 S.W.2d 333 (Mo. banc 1982), the trial court instructed on capital murder, second degree conventional murder and culpable negligence manslaughter. The defendant was found guilty of capital murder. In holding that it was not plain error to fail to give an instruction on conventional manslaughter, the court said: "The jury was given the option of exercising leniency and convicting appellant of charges of lesser degree than capital murder. That it declined to do so makes it illogical to believe that it would have made any difference in the verdict had a conventional manslaughter instruction been given." Id. 339.

The principles found in the cases above cited are embodied in recent cases of the United States Supreme Court dealing with the collateral review of instructional error. As recently observed, other than in death penalty cases, that court has never held that the Due Process Clause per se guarantees the right of a defendant to have the jury instructed on a lesser included offense. *Beck v. Alabama*, supra. In dealing with instructional error in general, that court has announced the following precepts:

> In short, the failure to give a requested instruction on *the presumption of innocence does not* in and of itself *violate the Constitution*. Under Taylor, such a failure must be evaluated in light of the *totality of the circumstances*—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelm-

ing, and other relevant factors—*to determine* whether the defendant received *a constitutionally fair trial. Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640, 643 (1979) (emphasis added).

We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice.... *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783, 801 (1982). [T]he degree of prejudice we have required a prisoner to show before obtaining collateral relief for errors in the jury charge is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.'

. . . .

So stated, Frady's claim of actual prejudice has validity only if an error in the instructions concerning an element of the crime charged amounts to prejudice per se, regardless of the particular circumstances of the individual case. Our precedents, however, hold otherwise. Contrary to Frady's suggestion, he must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 169–170, 102 S.Ct. 1584, 1595–1596, 71 L.Ed.2d 816, 831–832 (1982).

■ This case is not controlled by *Beck v. Alabama*, supra, relied on by movant. First, in that case the Supreme Court was considering the validity of a sentence of death. Second, in *Beck* the jury was not instructed on any lesser included offense, but given the sole option of death or acquittal. It is significant that first degree felony murder was not, in the classic sense, a lesser included offense of capital murder. In *State v. Baker*, 636 S.W.2d 902 (Mo.

banc 1982), cert. denied 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983), a decision to be applied prospectively, first degree murder was held to involve an additional element. "Thus, on the one hand, the unavailability of the third option of convicting on a lesser included offense may encourage the jury to convict for an impermissible reason—its belief that the defendant is guilty of some serious crime and should be punished." *Beck v. Alabama*, supra, 447 U.S. at 642, 100 S.Ct. at 2392, 65 L.Ed.2d at 406. In this case the jury was instructed on the lesser included offenses of second degree murder and conventional manslaughter. As observed in *State v. Baker*, supra, at 905, "examination of the elements of the homicides, notably the mental states, illustrates that it is second degree murder, not first degree murder, which would sufficiently test a jury's belief of the crucial facts for a conviction of capital murder." In this case evidence of the movant's guilt was strong. The failure to instruct on first degree felony murder did not result in manifest injustice. *State v. Baker*, supra. Nor does the record demonstrate actual prejudice. *Engle v. Isaac*, supra. In the totality of the circumstances, the failure of the trial court to instruct on first degree felony murder did not deprive the movant of a fair trial. *Kentucky v. Whorton*, supra. The movant's first point is denied.

■ Movant's next point is that his trial counsel was constitutionally ineffective in two respects. To establish ineffectiveness to that degree, the burden was upon the movant to prove two factors. *Decker v. State*, 623 S.W.2d 563 (Mo.App.1981). First, that his counsel did not exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances. Second, if there is such a finding, that the movant was prejudiced thereby. *Seales v. State*, 580 S.W.2d 733 (Mo. banc 1979).

■ Movant first contends such ineffectiveness was established because his trial counsel did not request an instruction on first degree felony murder. It was the duty of the trial court to "instruct the jury

upon all questions of law necessary for its guidance in returning a verdict." Rule 28.-02(a). The instruction on first degree felony murder was not an optional instruction. Because of the mandatory duty of the trial court to fully instruct, movant has not established prejudice by the absence of such a request.

The movant next contends such ineffectiveness was established because trial counsel did not in his motion for a new trial preserve error because of the absence of such an instruction. It is true that appellate decisions have held the Notes on Use to MAI–CR 6.02, effective September 28, 1975, direct that such an instruction be given. *State v. Rapheld*, supra. However, the performance of trial counsel is to be measured against the state of the law when the motion for a new trial was filed. Trial counsel was not required to predict the development of the law with unerring accuracy. *Pollard v. State*, 627 S.W.2d 114 (Mo.App.1982); *Larrabee v. State*, 616 S.W.2d 542 (Mo.App.1981). The movant offered no evidence to establish trial counsel was ineffective in respect to that motion.

Commencing in 1975, the homicide laws and corresponding instructions have been the subject of revision, change and amendment. The language of the statutory enactments involved in many respects has been new and different. New concepts were presented to the bar and bench. The proper procedure has in many respects been less than obvious. The history of such change is outlined in *State v. Goddard*, 649 S.W.2d 882 (Mo. banc 1983).

For the disposition of this point, it is sufficient, by way of illustration, to note the following. Before 1975 there was but one offense of first degree murder. Under § 559.010, now repealed, that offense included any willful deliberate and premeditated killing and any homicide committed in the perpetration or attempt to perpetrate any of five named felonies. After the amendments of 1975, the statutes defined two distinct homicides, capital murder (§ 559.005, now repealed) and first degree felony murder (§ 559.007, now repealed).

See the dissenting opinions in *State v. Goddard*, supra; *State v. Wilkerson*, 616 S.W.2d 829 (Mo. banc 1981). As noted, the latter was not, in the classic sense, a lesser included offense of the former. *State v. Baker*, supra. The Notes on Use to MAI–CR 6.02, effective September 28, 1975, are less than clear. This is emphasized when those Notes are compared with the Notes on Use to MAI–CR 6.02, effective March 1, 1975. It is significant that both series of Notes on Use treat the two types of homicides as distinct offenses. *State v. Rapheld*, supra, was not decided until two years after the motion for a new trial in question was filed. See *State v. Wilkerson*, supra. The requirement of instructing on first degree felony murder enunciated in that case was found in the ramifications of the newly enacted statutes. It was not a well established legal concept such as that involved in *State v. Zweifel*, supra, the case principally relied upon by movant. The movant has not met his burden in establishing that a reasonably competent attorney under similar circumstances would have asserted an error that well informed hindsight now makes apparent. For this reason, movant's second point is without merit.

It is not necessary therefore to consider if movant has established prejudice by the omission of which he complains. However, it is appropriate to observe the omission did not pertain to a defense as was the case in *State v. Zweifel*, supra. Further, the instructions that were given provided the jury with an adequate opportunity to convict the movant of a lesser offense. *State v. Bolder*, supra. In *State v. Kurtz*, supra, the defendant was convicted of murder in the first degree by poison under § 559.010, now repealed. Upon review, the Supreme Court concluded that even though the Notes on Use to MAI–CR 6.02 required the same, the failure to give instructions on second degree conventional murder and manslaughter was not plain error. In a subsequent 27.26 proceeding, it was held failure to assert that omission in the motion for a new trial did not per se establish

the ineffectiveness of counsel. In so holding, it was said: "The omission alone does not imply prejudice that would nullify her conviction, ... nor will we infer such prejudice from that omission when on movant's earlier appeal the Supreme Court upheld her conviction as just." *Kurtz v. State,* 645 S.W.2d 7, 9 (Mo.App.1982) (citation omitted).

■ By his last point the movant presents a novel question. The test of the blood from the movant's knife necessarily consumed that specimen. The results of that test matched that specimen to the blood of the victim. The movant was given no notice the test was to be performed. Because he had no opportunity to test and cannot now test that specimen, movant contends the admission of the results of that test denied him his constitutional right of confrontation as guaranteed by the Sixth Amendment.

The movant recognizes the erroneous admission of evidence is trial error. He likewise acknowledges his failure to preserve his contention by objection and on direct appeal. However, in essence he argues that the allegedly inadmissible evidence resulted in actual prejudice and caused his trial to be fundamentally unfair within the rules cited in *Dixon v. State,* 624 S.W.2d 860 (Mo.App.1981). Therefore, he concludes that error may be considered in this collateral review.

Assuming, without deciding, the same to be the case, the point will be considered. The movant cites cases dealing with the extent of the right of cross-examination as guaranteed by the Sixth Amendment. Neither party cites authority dealing with the right to test. Independent research has developed cases considering such a right as a matter of due process. *State v. Lowrance,* 619 S.W.2d 354 (Mo.App.1981) held that the defendant was not denied due process or the right of confrontation because the contents of a hypodermic syringe were consumed by the testing procedure. In *State v. Sprout,* 365 S.W.2d 572 (Mo.1963), evidence of blood grouping tests was not inadmissible because of the inadvertent

loss of the material. Compare *State v. Bush,* 595 S.W.2d 386 (Mo.App.1980); *State v. Preston,* 585 S.W.2d 569 (Mo.App. 1979). *State v. Carlson,* 267 N.W.2d 170 (Minn.1978), declares that due process does not deny the admission of the evidence of a blood test because the specimen is so consumed.

*State v. Carlson,* supra, suggests where evidence might be consumed in testing, it is good practice to notify the defendant for his observation. Although "[i]t is generally held by the cases that the absence of the accused during the making of an experiment does not render inadmissible testimony of such experiment." Annot., Test— Absence of Accused—Admissibility, 17 A.L.R.2d 1078 (1951). It has also been held the absence of notice to the accused does not make such evidence inadmissible. *Corens v. State,* 185 Md. 561, 45 A.2d 340 (1946). Also see 29 Am.Jur.2d Evidence § 821 (1967). *State v. Carlson,* supra, further suggests that an objection to such evidence will be considered only when a defendant has laid a foundation therefore. First, a defendant must by motion seek a sample of the specimen for testing. See *State v. Lowrance,* supra. The state must then produce a testable sample or establish its good faith in the absence thereof. In the absence of such production, and upon an adverse determination on the issue of good faith, on proper objection or motion, the trial court may consider the admissibility of the state's test evidence. Similar authorities are collected in *State v. Carlson,* supra.

At an early date it was observed the Sixth Amendment was to preserve the common law right of confrontation of witnesses and not to broaden that right or disturb the exceptions thereto. *Salinger v. United States,* 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed. 398 (1926). It has been recently declared, "[t]his reflects the truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values,' *California v. Green* 399 U.S. [149], at 155, 90 S.Ct. [1930], at 1933 [26 L.Ed.2d 489 (1970)], and 'stem from the same roots,'

*Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210 [218], 27 L.Ed.2d 213 (1970)." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597, 608 (1980). Movant confronted the scientist who performed the blood test. The scientist was much in the same position as a police officer who watched another perform an experiment. "Testimony as to what the detective observed with his own senses did not deprive defendant of his constitutional right of confrontation." *State v. Caffey,* 404 S.W.2d 171, 177 (Mo.1966). Compare *State v. Merritt,* 591 S.W.2d 107 (Mo.App.1979). The movant's last point is denied and the judgment is affirmed.

HOGAN and PREWITT, JJ., concur.